State of WISCONSIN PUBLIC SERVICE COMMISSION,
Plaintiff-Appellant,

v.

WISCONSIN BELL, INC., d/b/a Ameritech Wisconsin, a
Wisconsin corporation, Defendants-Respondents.

Court of Appeals

*No. 96–3038. Oral argument April 17, 1997.—Decided May
15, 1997.*

(Also reported in 566 N.W.2d 496.)

On behalf of the plaintiff-appellant, there were briefs and oral argument by *Glenn Kelley* of the Public Service Commission.

On behalf of the defendants-respondents, the cause was submitted on the brief of *John R. Dawson, Bradley D. Jackson,* and *Joan L. Eads* of Foley & Lardner of Madison. There was oral argument by *John R. Dawson.*

Before Eich, C.J., Vergeront and Deininger, JJ.

EICH, C.J. The Wisconsin Public Service Commission appeals from an order dismissing its complaint against Wisconsin Bell, Inc., d/b/a Ameritech Wisconsin. The commission sued Ameritech to recover forfeitures from the company, and also to recover damages on behalf of individual Ameritech consumers, on the basis of the commission's allegations that Ameritech violated various service quality standards set forth in chapter 196, STATS., and related provisions of the Wisconsin Administrative Code. The trial court dismissed the action on grounds that the complaint failed to state a claim for which relief could be granted, concluding that the commission lacked statutory authority to sue (1) for forfeitures on its own behalf;[1] and (2) on behalf of individual citizens to enforce rights granted to them by other provisions of chapter 196. We affirm the order.

The facts are not in dispute and the commission's appeal raises only questions of law—the interpretation of statutes and their application to the facts—which we decide *de novo*. *State v. Schoepp*, 204 Wis. 2d 266, 270, 554 N.W.2d 236, 238 (Ct. App. 1996).

The commission's complaint alleged that Ameritech had failed to meet time standards set forth in chapter 196, STATS., and various provisions of the administrative code, for responding to repair calls and restoring interrupted telephone service. The commission claimed that these failures violated

---

[1] The trial court recognized, and we agree, that the attorney general, not the commission, is authorized to sue on behalf of the State for forfeitures for violations of statutory and regulatory utility service standards.

Ameritech's obligation under § 196.03(1), STATS.,[2] to provide reasonably adequate service to its customers, and thus made the company liable for forfeitures under § 196.66, STATS.[3] The commission also alleged that Ameritech's failure to meet the service standards violated its obligation under the newly created "Protection of Telecommunications Consumers" law, § 196.219, STATS., which was created by 1993 Wis. Act 496, § 130. The law protects individual consumers of telecommunications utilities—"any person" using their services—and contains a list of "prohibited practices"; the commission claims that Ameritech violated the provision dealing with impairment of the "speed, quality or efficiency of services." Section 196.219(3)(c). According to the commission, other provisions of § 196.219 authorize it to sue for forfeitures in its own name and also to sue for damages and other relief on behalf of individual consumers.

As a creature of the legislature, the commission has only such powers as the legislature expressly confers upon it, or those that are "necessarily implied" by the statutes under which it operates, specifically, chapter 196, STATS. *Wisconsin Power & Light Co. v. Public Serv. Comm'n*, 181 Wis. 2d 385, 392, 511 N.W.2d 291, 293 (1994). The commission argues that its authority to sue—both for the forfeitures and on behalf

---

[2] Section 196.03(1), STATS., provides, generally, that "a public utility shall furnish reasonably adequate service and facilities."

[3] Section 196.66, STATS., provides: "If any public utility violates this chapter . . . or fails, neglects or refuses to obey any lawful requirement . . . of the commission . . . upon its application, for every violation, failure or refusal[,] the public utility shall forfeit not less than $25 nor more than $5,000."

of individual Ameritech consumers—is found in the "enforcement" provisions of § 196.219(4), STATS., which provide as follows:

> (4) ENFORCEMENT. (a) On the commission's own motion or upon complaint filed by the consumer, *the commission shall have jurisdiction* to take administrative action or *to commence civil actions against telecommunications utilities to enforce this section.*
>
> (b) The commission may, at its discretion, institute in any court . . . a proceeding against a telecommunications utility for injunctive relief to compel compliance with this section, to compel the accounting and refund of any moneys collected in violation of this section *or for any other relief permitted under this chapter.*

(Emphasis added.)

The commission views the two subsections as independent and unrelated. It acknowledges that subsection (a) refers only to "this section," and that the statute as a whole says nothing about forfeitures. It argues, however, that subsection (b) gives it independent authority to institute court proceedings "for any other relief permitted under" chapter 196, STATS., and it claims that the forfeitures specified in § 196.66, STATS., constitute such "other relief." Thus, says the commission, § 196.219, STATS., authorizes it to commence forfeiture actions in circuit court in its own name.

Ameritech, arguing that the statute does no such thing, points out first that forfeiture actions are neither covered by nor mentioned in § 196.219, STATS., but are specifically provided for in another statute, § 196.44(3), STATS., which states: "Any forfeiture, fine

or other penalty under this chapter may be recovered as a forfeiture *in a civil action brought in the name of the state* . . . ." (Emphasis added.) Ameritech says that the provisions of that statute, read in conjunction with §§ 778.01 and 778.02, STATS., which expressly provide that "every . . . action" seeking a forfeiture "shall be in the name of the state of Wisconsin," and with § 165.25(1), STATS., which provides that the attorney general "shall appear for the state and prosecute . . . all actions and proceedings . . . in . . . circuit court in which the state is a party," constitute persuasive authority that the attorney general, not the commission, is authorized to seek the forfeitures sought in this proceeding.

We agree. There is no express authority in § 196.219, STATS., that would allow the commission to sue a utility to collect forfeitures.

Alternatively, the commission argues that such authority must be necessarily implied from the "any other relief" language of § 196.219(4)(b), STATS., because a forfeiture is a type of "relief" specified in chapter 196.

■

Our task in interpreting statutes is to ascertain the intent of the legislature, and all such inquiries begin—and many end—with consideration of the plain language of the statutes under examination. When we are asked to decide, as the commission requests in this case, whether a power not specifically granted to an agency may nonetheless be implied, our inquiry is guided by the rule—set forth in a case dealing with the powers of the Public Service Commission—that "[a]ny reasonable doubt as to the existence of an implied power in an agency should be resolved against the exercise of such authority." *Kimberly-Clark Corp. v.*

*Public Serv. Comm'n,* 110 Wis. 2d 455, 462, 329 N.W.2d 143, 146 (1983).

We begin our consideration of the commission's "implied authority" argument by noting several other statutes in which the legislature expressly delineated its intent to empower a governmental agency to impose or seek forfeitures. *See, e.g.,* § 11.60(4), STATS. (granting the elections board the power to seek forfeitures for violation of various campaign financing laws); § 50.04(5)(c), STATS. (granting the Department of Health and Social Services authority to impose forfeitures for violation of nursing home laws or regulations); § 100.30(5)(a), STATS. (granting the Department of Agriculture power to seek forfeitures for violations of the Unfair Sales Act); and § 426.301, STATS. (granting the commissioner of banking authority to seek penalties for violations of chapters 421 to 427).

As we noted above, the general forfeiture law, chapter 778, STATS., provides that forfeiture actions are to be commenced "in the name of the state," and § 165.25(1), STATS., provides that the attorney general's office shall represent the state in such actions. The legislature did not see fit to include an express exception to that rule in enacting § 196.219, STATS., as it did in statutes dealing with several other agencies, and the commission has not persuaded us that its limited statutory power under § 196.02(12), STATS., to "sue and be sued *in its own name*" would authorize it to bring an action in the state's name.

Nor are we impressed by the commission's argument that forfeitures must necessarily be included in the "other relief" provision of § 196.219(4)(b), STATS. The argument attempts to equate punishment—or, in the commission's words, a "punitive remedy"—with

757

"relief." We agree with Ameritech that the argument is unavailing in that the law distinguishes between penalties, which exist to punish a wrongdoer without regard to the damages caused, and remedies, which seek to provide relief or redress for a wrong, or to prevent further injury. In *State v. Block Iron & Supply Co.*, 183 Wis. 2d 357, 366–67, 515 N.W.2d 332, 335–36 (Ct. App. 1994), in considering statutory "penalties" for discharge of hazardous waste, we used the terms "penalty" and "forfeiture[ ]" interchangeably.

We think a proceeding seeking "relief" is something very different, and we believe the enforcement provisions of § 196.219, STATS., are properly considered remedial, rather than punitive. For example, in its enumeration of enforcement actions available to the commission, the statute lists proceedings for "injunctive *relief*" to (1) compel compliance with the statute; or (2) seek an accounting and refund of improperly collected moneys. These are plainly remedial, rather than penal, in nature. We consider that the add-on language "or for any *other relief* permitted by this chapter" is properly read as referring to the same or similar type of "remedial" relief as just mentioned—rather than to the punitive sanctions of a forfeiture action, which is left to the attorney general under § 196.44(3) and chapter 778, STATS.

Finally, the commission maintains that even if the powers it seeks to exercise in this case are not plainly visible in § 196.219, STATS., the statute's legislative history provides strong support for their existence. It points to documents circulated during what it describes as "negotiation" sessions between representatives of the commission and representatives of the telecommunications industry—including

Ameritech—all of whom were apparently attempting to contribute to the content of the bill that eventually became 1993 Wis. Act 496.[4]

Legislative history is frequently problematic. We have in other cases expressed concern over the "tenuous nature of legislative history analys[e]s," noting Judge Leventhal's description of the use of legislative history " 'as the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends.' " *Town of Hallie v. City of Eau Claire*, 176 Wis. 2d 391, 396–97, 501 N.W.2d 49, 51 (Ct. App. 1993) (quoting *Conroy v. Aniskoff*, 507 U.S. 511, 519 (1993) (Scalia, J. concurring)), *overruled on other grounds, Wagner Mobil, Inc. v. City of Madison*, 190 Wis. 2d 585, 527 N.W.2d 301 (1995). We agree with the commission that "[a]n official statement from a legislative source is valid evidence of legislative intent." *State ex rel. Shroble v. Prusener*, 185 Wis. 2d 102, 111, 517 N.W.2d 169, 173 (1994). Here, however, the materials the commission offers are simply back-and-forth notes between commission staff and members of an "industry committee," and such "statements from nonlegislative sources" do not have the "probative value" of official legislative records and should be used "cautiously," if at all. *Ball v. District No. 4, Area Bd.*, 117 Wis. 2d 529, 544–45, 345 N.W.2d 389, 397 (1984).

It is true that the *Ball* court also noted that nonlegislative materials could be relevant when they "form[ ] a vital link in the chain of legislative history of

---

[4] Section 196.219, STATS., was part of 1993 Wis. Act 496, the "Information Superhighway Act," taken up by the legislature in special session to partially deregulate the telecommunications utilities and encourage development of a competitive "telecommunications marketplace."

a particular statute," *id.* at 545, 345 N.W.2d at 397, but the commission has not persuaded us that the materials to which it refers form any such link. Indeed, as we noted, much of the material the commission offered to indicate the legislature's intent was prepared by the commission's own staff. Finally, we note that the commission has not referred us to the "official" Legislative Reference Bureau analyses of the bill, *see* 1993 A.B. 2, which was enacted as 1993 Wis. Act 496, and makes no specific reference to the sections at issue here.

■

We thus reject the commission's argument that § 196.219(4), STATS., authorizes it to bring the forfeiture action it attempts to set forth in its complaint against Ameritech, and we affirm the trial court's order dismissing the claim.

The commission's complaint also sought injunctive relief and monetary damages on behalf of Ameritech consumers who may have experienced "significant aggregate damages" as a result of Ameritech's violation of the service standards. According to its complaint, the commission sought to recover the following damages, among others, on the consumers' behalf: "lost wages, lost business and profits, unnecessary expenses, emotional distress and delayed access to medical providers and public safety services."

Concluding that the commission lacked statutory authority to bring an action to "recover the private damages of another"—and also that the commission failed to establish, as required by statute, that it had found the violations to exist—the trial court dismissed this "derivative" or *parens patriae* claim. Our independent review of the law satisfies us that the trial court correctly decided this issue as well.

Continuing its reliance on § 196.219(4), STATS., the commission argues that because subsection (4)(a) authorizes it to commence an action, either on its own motion or upon a consumer complaint, for violation of the service standards, and because subsection (4)(b) authorizes it to seek injunctive relief compelling accountings and refunds to consumers—as well as "any other relief permitted under this chapter"—it follows that it must have the authority to go into court and sue for general damages on behalf of the consumers of a utility alleged to have violated or deviated from the standards. The commission rejects Ameritech's contention that a state's ability to sue in *parens patriae* is quite limited, calling the argument a "red herring" which lacks any vitality in light of what the commission says is the plainly delegated authority found in § 196.219(4) to sue on the consumers' behalf.

We begin by noting that § 196.219(4m), STATS., authorizes any "person" claiming injury as a result of violation of the service standards to "commence a civil action to recover damages or to obtain injunctive relief," and that no similar authority is granted to the commission.

We held above that the "other relief" provisions of § 196.219(4)(b), STATS., do not authorize the commission to seek forfeitures in light of (among other things) provisions elsewhere in the statutes, confining such authority to the attorney general. We think the same may be said for the commission's claim that the same provisions authorize it to commence an action seeking damages for "emotional distress" and a variety of other civil-lawsuit damages on behalf of individual citizens. It may be, as the commission argues, that this is not a traditional *parens patriae* action—which is strictly limited to cases implicating "sovereign" rather

than individual interests, *Pennsylvania v. New Jersey*, 426 U.S. 660, 665 (1976)—but it is a type of action we believe cannot be authorized by implication. The Wisconsin Supreme Court has said, for example, that even the attorney general must be "specifically granted" the power to "act for the state as *parens patriae*," *Flatley v. State*, 63 Wis. 2d 254, 261, 217 N.W.2d 258, 262 (1974), and we are loath to imply a similar power in the Public Service Commission.[5] The legislature elected to give the utility's consumers, not the commission, a right of action against the offending utility under § 196.219, and we would be rewriting the statute, rather than interpreting it, were we to rule as the commission urges in this case.

Finally, as the trial court correctly observed, the commission's complaint failed to allege that it had made a finding that Ameritech violated the service standards set forth in § 196.219, STATS. We think this is significant because under § 196.219(4m), consumers may commence a civil damage action for injuries

---

[5] In *Flatley v. State*, 63 Wis. 2d 254, 261, 217 N.W.2d 258, 262 (1974), the court stated, "Unless the power to prosecute a specific action is granted by law, the office of the attorney general is powerless to act." (Footnote omitted.)

We note, too, that when the legislature intended for the attorney general to have the authority to advance claims on behalf of individuals, it expressly granted that authority. *See, e.g.*; § 100.205(7), STATS. (authorizing Department of Justice to bring a claim on behalf of individuals injured under the laws regulating motor vehicle rustproofing); § 109.07(4)(b), STATS. (plant closings); § 134.22(4), STATS. (same for ticket refunds); § 440.945(5)(b), STATS. (cemetery monuments); § 563.73(4), STATS. (bingo and raffle control); § 707.57(3), STATS. (time-share ownership). As before, the legislature's silence on a subject as significant as the regulation of public utilities speaks loudly indeed.

suffered as a result of violation of the standards "[u]pon a finding of a violation of this section by the commission." If, under the law, these consumers would not have a cause of action themselves absent compliance with that condition, it makes little sense to hold that the commission could bring the action in their place.

We conclude, therefore, that the trial court properly dismissed the commission's claim for damages on behalf of Ameritech's consumers.

*By the Court.*—Order affirmed.