STATE of Wisconsin, Plaintiff-Respondent,

v.

Eyad H. HAMMAD, Defendant-Appellant.

ONE 1986 BMW 2-DOOR, VEHICLE IDENTIFICATION NUMBER WBAAB5401C9691032, Defendant-(In T.Ct.).

Court of Appeals

*No. 95–2669. Submitted on briefs February 4, 1997.—Decided July 15, 1997.*

(Also reported in 569 N.W.2d 68.)

On behalf of the defendant-appellant, the cause was submitted on the brief of *Andrew M. Spheeris* of Milwaukee.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *James E. Doyle*, attorney general, and *Maureen McGlynn Flanagan*, assistant attorney general.

Before Wedemeyer, P.J., Fine and Curley, JJ.

CURLEY, J.  Eyad H. Hammad appeals from a civil forfeiture order confiscating his automobile and from an order denying his motion for reconsideration. Hammad argues that the forfeiture action violated the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. Although Hammad is correct that the forfeiture of his vehicle implicates the protections guaranteed by the Eighth Amendment's Excessive Fines Clause, we conclude that, after applying the test set forth in *State v. Seraphine,* 266 Wis. 118, 62 N.W.2d 403 (1954), the civil forfeiture in this case did not violate the Eighth Amendment. Accordingly, we affirm both orders.

## I.

The State of Wisconsin brought a statutory civil forfeiture action, *see* § 973.075, STATS., *et seq.*, claiming that a vehicle owned by Hammad was used to transport property received in the commission of a felony. The action was commenced on May 22, 1995, although the vehicle had been seized earlier on April 28, 1995, following Hammad's arrest involving the receipt of stolen property. *See* §§ 943.34 & 939.32, STATS.

The forfeiture in this case evolved out of a "sting" operation conducted by the City of Milwaukee Police

Department. A police officer, posing as an employee of a department store, approached Hammad claiming to possess items stolen from his employer that he wished to sell. The police officer later testified that Hammad agreed to purchase six VCRs, two combination TV/VCRs, and a large quantity of aspirin, all of which Hammad thought were stolen from the department store. The items had a wholesale value of approximately $2,005. Hammad purchased them for $175.

During the delivery of the "stolen" items to Hammad's workplace, Hammad asked the police officer to help him move the items. At one point, Hammad asked the officer to load six VCRs into the trunk of Hammad's car—a 1986 BMW that is the subject of the forfeiture action in this case. The officer complied. Although Hammad later denied asking the officer to put the items in his car, and claimed at the forfeiture hearing that it was the officer's idea to place several of the stolen items in the car's trunk, the trial court found that the officer's testimony was more credible than Hammad's. The trial court granted the State's demand for forfeiture of the car, finding that the vehicle had been used to transport property received in the commission of a felony. Hammad later brought a motion for reconsideration that the trial court denied.[1]

## II.

▬ Whether the civil forfeiture of Hammad's car under § 973.075(1)(b), STATS., violated the Excessive

---

[1] No written order was filed by the trial court memorializing its denial of Hammad's motion for reconsideration. Consequently, after the submission of this case on appeal, we directed Hammad to file a signed final order denying his motion for reconsideration and a new notice of appeal from that final order.

Fines Clause of the Eighth Amendment to the United States Constitution, presents an issue that we review *de novo.*[2] *See City of Milwaukee v. Kilgore,* 193 Wis. 2d 168, 183, 532 N.W.2d 690, 695 (1995). The Eighth Amendment provides: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. CONST. amend. VIII. As we recently noted, "[a]lthough the United States Supreme Court has never held that the Excessive Fines Clause applies to the States through the Fourteenth Amendment, we assume that it does." *City of Milwaukee v. Arrieh,* 211 Wis. 2d 762, 565 N.W.2d 291, 294 (Ct. App. 1997) (citations omitted).[3]

"A person claiming to be aggrieved by the application of a statute to his particular circumstances is entitled to challenge the constitutional foundation of that statute in our courts." *Chicago & N.W. Ry. Co. v. La Follette,* 27 Wis. 2d 505, 520, 135 N.W.2d 269, 278 (1965). We begin, however, with the presumption that

---

[2] Section 973.075(1)(b), STATS., provides in relevant part:

**(1)** The following are subject to seizure and forfeiture under ss. 973.075 to 973.077:

(b)  All vehicles, as defined in s. 939.22(44), which are used to transport any property or weapon used or to be used or received in the commission of any felony . . . .

[3] On appeal, Hammad does not rely on or argue that the forfeiture of his automobile violated the Wisconsin Constitution. Accordingly, we do not address that issue. *See Burch v. American Family Mut. Ins. Co.,* 198 Wis. 2d 465, 473 n.5, 543 N.W.2d 277, 280 n.5 (1996). We do note that the language of Article I, § 6 of the Wisconsin Constitution is identical to that of the federal Constitution's Eighth Amendment. *See* WIS. CONST. art. I, § 6; *see also City of Milwaukee v. Arrieh,* 211 Wis. 2d 762, 769 n.8, 565 N.W.2d 291, 294 n.8 (Ct. App. 1997).

the statute is constitutional and we will uphold the statute unless it is proven unconstitutional beyond a reasonable doubt. *See Libertarian Party of Wisconsin v. State,* 199 Wis. 2d 790, 801, 546 N.W.2d 424, 430 (1996). Further, " '[e]very presumption must be indulged to sustain the law if at all possible.' " *State v. McManus,* 152 Wis. 2d 113, 129, 447 N.W.2d 654, 660 (1989).

Moreover, our Supreme Court, in addressing challenges to the constitutionality of legislatively-authorized fines, has long cautioned:

> "The courts are reluctant to say that the legislature has exceeded its power in authorizing excessive fines, and as a general rule will not do so except in a very clear case; and, therefore, the widest latitude should be given to the discretion and judgment of the legislature in determining the amount necessary to accomplish the object and purpose it has in view."

*Seraphine,* 266 Wis. at 121, 62 N.W.2d at 405 (citation omitted). Given these standards in effect for constitutional challenges, Hammad bears a heavy burden in showing that the application of § 973.075(1)(b), STATS., violates his constitutional rights.

Prior to *Austin v. United States,* 509 U.S. 602, 113 S. Ct. 2801, 125 L.Ed.2d 488 (1993), "[g]iven that the [Eighth] Amendment [wa]s addressed to bails, fines, and punishments," Supreme Court case law had "long . . . understood it to apply primarily . . . to criminal prosecutions and punishments." *Browning-Ferris Industries v. Kelco Disposal Inc.,* 492 U.S. 257, 262, 109 S. Ct. 2909, 2913, 106 L.Ed.2d 219, 230 (1989). The history of the Eighth Amendment convinced the Court

349

that "the Excessive Fines Clause was intended to limit only those fines directly imposed by, and payable to, the government." *Id.* at 266–69, 109 S. Ct. at 2915–16, 106 L.Ed.2d at 232–34 (discussing history of Eighth Amendment as it was derived from the Virginia Declaration of Rights and the English Bill of Rights of 1689).

In *Austin*, however, the Supreme Court enlarged the reach of the Excessive Fines Clause to include civil forfeiture actions, if the forfeiture law sought "to extract payments, whether in cash or in kind, 'as *punishment* for some offense.' "[4] *Austin,* 509 U.S. at 609–10, 113 S. Ct. at 2805, 125 L.Ed.2d at 497 (citation omitted). The Court remarked that " '[t]he notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law.' " *Id.* at 610, 113 S. Ct. at 2805, 125 L.Ed.2d at 497 (citation omitted). Thus, the Court stated that the proper question in deciding whether the Excessive Fines Clause applied to the federal forfeiture statute, was not whether it was based in civil or criminal law, "but rather whether it [wa]s punishment." *Id.* at 610, 113 S. Ct. at 2806, 125 L.Ed.2d at 498. Accordingly, as relevant to this case, the Supreme Court has expanded the breadth of the Excessive Fines Clause to include civil forfeiture actions that are commenced by a government and that are, in whole or in part, driven by a desire to punish a person. *Id.* at 610–11, 622 113 S. Ct. at 2806, 2812, 125 L.Ed.2d at 498, 505–06. Further, the

[4] Specifically at issue in *Austin v. United States,* 509 U.S. 602, 113 S. Ct. 2801, 125 L.Ed.2d 488 (1993), was "whether the Excessive Fines Clause of the Eighth Amendment applies to forfeitures of property under 21 U.S.C. §§ 881(a)(4) and (a)(7)"—the federal civil forfeiture law. *Id.* at 604, 113 S. Ct. at 2803, 125 L.Ed.2d at 494.

Court set forth a two-part test in *Austin* to determine whether a forfeiture violated the Excessive Fines Clause—the first part requires that we determine whether the forfeiture can be considered a punishment, the second part requires that we determine whether the "forfeiture is constitutionally 'excessive.' " *Id.* at 622–23, 113 S. Ct. at 2812, 125 L.Ed.2d at 506. We address both parts of this test to resolve the issue raised by Hammad in this case.

■

Under § 973.075(1)(b), STATS., a vehicle is subject to governmental seizure and forfeiture if it is "used to transport any property or weapon used or to be used or received in the commission of any felony." The State concedes that a forfeiture under § 973.075(1)(b), cannot be distinguished from a forfeiture under the federal statute that the Supreme Court in *Austin* concluded was a punishment subject to the limitations of the Excessive Fines Clause.[5] We agree. A forfeiture of a vehicle "used to transport any property or weapon used or to be used or received in the commission of any felony," clearly has a punitive purpose because the legislature "has chosen to tie forfeiture directly to the commission of [felony] offenses." *Austin*, 509 U.S. at 620, 113 S. Ct. at 2811, 125 L.Ed.2d at 504.

---

[5] The State limits its concession of punitiveness to an Excessive Fines Clause analysis of forfeitures of vehicles pursuant to § 973.075(1)(b), STATS. Thus, the State does not concede that such forfeitures are punitive for purposes of a double jeopardy analysis under the Fifth Amendment. *See United States v. Ursery,* — U.S. —, —, 116 S. Ct. 2135, 2141–42, 135 L.Ed.2d 549, 567 (1996). Nor does it concede the punitiveness of forfeitures under § 973.075(1)(a), STATS. We need not address these issues because they are not relevant to this case.

351

Because we conclude that the forfeiture in this case under § 973.075(1)(b) falls within the protections of the Excessive Fines Clause of the Eighth Amendment, we next turn to the second prong of the *Austin* analysis—that is, whether the forfeiture in this case is "excessive" within the meaning of the Eighth Amendment. Hammad attempts to short-circuit this part of the *Austin* test and argues that if the forfeiture is punitive it is automatically "excessive" under the Eighth Amendment. Hammad's argument is not supported by the holding in *Austin*.

Rather, the majority opinion in *Austin*, while resolving the question of whether the Excessive Fines Clause applied to civil forfeiture actions, left open the question of the correct analysis for determining excessiveness under the Eighth Amendment. *See Austin*, 509 U.S. at 622–23, 113 S. Ct. at 2812, 125 L.Ed.2d at 506. The *Austin* majority concluded that "[p]rudence dictates that we allow the lower courts to consider that question in the first instance." *Id.*

As a result, this is an issue of first impression in Wisconsin and we must search for an appropriate test to determine whether the forfeiture of Hammad's automobile was "excessive" under the Eighth Amendment. The State presents three tests that have emerged in the lower courts since the release of *Austin*.

### A.

In his concurrence to the majority opinion in *Austin*, Justice Scalia proffered what has been coined as the instrumentality test. *See Austin*, 509 U.S. at 623–28, 113 S. Ct. at 2812–15, 125 L.Ed.2d at 506–09

(Scalia, J., concurring).[6] The premise behind the instrumentality test is that in an *in rem* forfeiture the lawful property is said to have committed an offense. *Id.* at 624, 113 S. Ct. at 2813, 125 L.Ed.2d at 507 (Scalia, J., concurring). Because the theoretical basis of the forfeiture is the legal fiction that the property itself is guilty, any wrongdoing on the part of the property owner is irrelevant. *Id.* at 626, 113 S. Ct. at 2814, 125 L.Ed.2d at 508 (Scalia, J., concurring). Thus, under the instrumentality test, the standard of "excessiveness" for an *in rem* forfeiture "is not how much the confiscated property is worth, but whether the confiscated property has a close enough relationship to the offense ... to render the property, under traditional standards, 'guilty' and hence forfeitable." *Id.* at 628, 113 S. Ct. at 2815, 125 L.Ed.2d at 509 (Scalia, J., concurring). Stated otherwise, Justice Scalia looks to the law of deodands from the English Common Law, suggesting that the property, having been tainted by unlawful use, can now be forfeited to the State irrespective of its value. *Id.* (Scalia, J., concurring).[7]

---

[6] For cases applying the instrumentality test see *United States v. Wild,* 47 F.3d 669, 673–76 (4th Cir.), *cert. denied sub nom, Greenfield v. United States,* 116 S. Ct. 128, 133 L.Ed.2d 77 (1995) and *United States v. Chandler,* 36 F.3d 358, 363–65 (4th Cir. 1994), *cert. denied,* 115 S. Ct. 1792, 131 L.Ed.2d 721 (1995).

[7] Under English law, a deodand was "any personal chattel which was the immediate occasion of the death of any reasonable creature, and which was forfeited to the crown to be applied to *pious* uses, and distributed in alms by the high almoner." BLACK'S LAW DICTIONARY 436 (6th ed. 1990). Thus, as Justice Scalia noted:

[I]f a man was killed by a moving cart, the cart and its horses were deodands, but if the man died when he fell from a wheel of an immobile cart, only the wheel was treated as a deodand, since only the wheel could be regarded as the cause of death.

## B.

Myriad lower courts have also tackled the troubling issue of what defines "excessiveness" under the Eighth Amendment. Consequently, a bumper crop of tests has emerged. The two most common of these tests are the proportionality test and the multi-factor test. The proportionality test is borrowed from a test that the Supreme Court formulated to evaluate claims under the Cruel and Unusual Punishment Clause of the Eighth Amendment. *See generally Solem v. Helm,* 463 U.S. 277, 103 S. Ct. 3001, 77 L.Ed.2d 637 (1983). In essence, the various versions of this test balance the value of the property forfeited versus the gravity of the criminal activity underlying the forfeiture. *See, e.g., United States v. 427 and 429 Hall Street,* 74 F.3d 1165, 1172 (11th Cir. 1996) (applying proportionality test—comparing severity of the fine with the seriousness of the underlying offense).

## C.

The other most-utilized test is referred to as the multi-factor test. In its purest form, the multi-factor test, like the proportionality test, compares the gravity of the offense with the harshness of the penalty, but this test continues on to explore whether the property was an integral part of the crime, and whether the criminal activity involving the property was extensive in terms of time and property use. *See, e.g., United States. v. 9638 Chicago Heights,* 27 F.3d 327, 331 (8th Cir. 1994) (discussing factors to be considered in determining whether a forfeiture is "excessive"); *People ex rel. Waller v. 1989 Ford F350 Truck,* 642 N.E.2d 460,

Austin, 509 U.S. at 628, 113 S. Ct. at 2815, 125 L.Ed.2d at 509 (Scalia, J., concurring) (citation omitted).

465–66 (Ill. 1994) (adopting multi-factor test, while rejecting instrumentality test).

The State contends that, under a review of all three of the various tests, the inescapable conclusion is that the forfeiture of Hammad's automobile was not "excessive" within the meaning of the Eighth Amendment. Hammad seemingly argues that we should apply the instrumentality test set forth in *U.S. v. Chandler*, 36 F.3d 358, 365 (4th Cir. 1994) (listing factors to be considered when applying the instrumentality test), *cert. denied*, 115 S. Ct. 1792, 131 L.Ed.2d 721 (1995), in deciding whether the forfeiture is excessive. We decline to apply the above tests because we conclude that Wisconsin case law provides us with an independent basis to analyze whether the forfeiture of Hammad's vehicle was "excessive."

## D.

■

As noted, this case presents an issue of first impression because there are no post-*Austin* cases in Wisconsin to guide us in the "excessiveness" analysis required in *Austin*. Nonetheless, we are not at an impasse because the Wisconsin Supreme Court in 1954 provided us with a blaze to lead us through the legal thickets that this issue presents. In *Seraphine*, the court, when analyzing a claim that a fine violated Article I, Section 6 of the Wisconsin Constitution, instructed:

> "In determining whether a fine authorized by statute is excessive in the constitutional sense, due regard must be had to the object designed to be accomplished, to the importance and magnitude of the public interest sought to be protected, to the

circumstances and the nature of the act for which it is imposed, and in some instances, to the ability of accused to pay. In order to justify the court in interfering and setting aside a judgment for a fine authorized by statute, the fine imposed must be so excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances."

*Seraphine,* 266 Wis. at 121–22, 62 N.W.2d at 405 (citation omitted). Thus, *Seraphine* provides a "multifactor" test to apply, that both anchors the analysis in Wisconsin precedent and combines many of the variants used in other jurisdictions. Accordingly, we conclude that the *Seraphine* standard should be used when analyzing whether a forfeiture of a vehicle under § 973.075(1)(b), STATS., is "excessive" within the meaning of the Eighth Amendment.

## III.

When measured against the *Seraphine* standard, the forfeiture of Hammad's automobile is not "excessive." One of the clear objects of § 973.075(1)(b), STATS., is to deter and punish those who would commit felonies and use their vehicles to accomplish their criminal purpose. The public interest is both obvious and significant because the use of a vehicle in the course of a felony frustrates law enforcement by permitting the guilty to quickly exit, or, as here, to abscond with the stolen goods.

Further, despite Hammad's protestation to the contrary, his was not a "record . . . absolutely clear, not a single felony or misdemeanor" because he was convicted of a class E felony as a result of his actions in this

matter. Moreover, Hammad's vehicle was ultimately involved with a crime when it was used to secrete expensive items purportedly belonging to another which, presumably, would have been used to transport the items but for Hammad's interceding arrest.

Finally, the vehicle's value, as determined by the trial court, was approximately $4,300—twice the value of the stolen property and significantly less than the maximum fine allowable for the crime of attempted receiving stolen property. Thus, the forfeiture is neither disproportionate to the crime nor unusual in nature. As such, the forfeiture does not shock public sentiment nor does it violate a reasonable person's sense of justice.

In sum, utilizing the *Seraphine* standard, we conclude that the forfeiture in this instance was not excessive within the meaning of the Excessive Fines Clause of the Eighth Amendment. Because Hammad has not met his burden in showing the unconstitutionality of the forfeiture, the orders are affirmed.

*By the Court.*—Orders affirmed.