Cynthia A. Schultz, Plaintiff-Appellant,
The Animal Lobby, Inc., Plaintiff-Co-Appellant,
v.
Charles J. Sykes, Journal Broadcast Group, Inc., and Journal Sentinel, Inc., Defendants-Respondents.
No. 03-0765.
Court of Appeals of Wisconsin.
Opinion Filed: April 1, 2004.
Before Deininger, P.J., Vergeront and Lundsten, JJ.
¶1. PER CURIAM.
Cynthia Schultz appeals a judgment awarding Charles Sykes, Journal Broadcasting Group, and Journal Sentinel $22,883.03 in attorneys' fees and costs from a prior appeal.[1] Animal Lobby appeals another judgment dismissing its claims against Sykes, Journal Broadcasting Group, and Journal Sentinel and holding it jointly and severally liable for $100 of the sanctions imposed on Schultz. We affirm both judgments for the reasons discussed below.

BACKGROUND
¶2. Animal Lobby and its president, Cynthia Schultz, sued radio talk show host Charles Sykes, his employer Journal Broadcast Group, and the Journal Sentinel newspaper for defamation. The trial court ultimately dismissed the action and awarded the defendants $168,944.97 in costs and attorneys' fees based on a finding that Schultz had attempted to suborn perjury from a witness. On appeal, we affirmed the dual sanctions of dismissal and costs and fees against Schultz, but remanded for additional determinations as to the amount of the defendants' costs and fees on appeal and whether Schultz's misconduct could be imputed to Animal Lobby. Schultz v. Sykes, 2001 WI App 255, ¶¶2-3, 53, 248 Wis. 2d 746, 638 N.W.2d 604.
¶3. On remand, the trial court set the amount of the defendants' recoverable costs and fees on appeal at $22,883.03. It further determined that Schultz's conduct could be imputed to Animal Lobby, warranting dismissal of all of Animal Lobby's claims. The parties agreed on the record to limit the amount of Animal Lobby's joint and severable liability for the defendants' costs and fees to $100 to avoid the necessity of another hearing on Animal Lobby's ability to pay. Both Schultz and Animal Lobby appeal.

DISCUSSION

Schultz's Appeal
¶4. Schultz sets forth a number of reasons why she believes the trial court lacked initial authority to have the sanction against her include appellate costs and fees which had not yet been incurred at the time her action was dismissed and why this court erred in remanding for a determination of the eventual amount of those fees. Those arguments are misplaced, however. The validity of the trial court's initial sanction and this court's interpretation of it to include appellate costs and fees were settled by this court's opinion on the previous appeal. Once the time for reconsideration expired and Schultz had exhausted her appeals, our opinion became the law of the case, precluding further review of the validity of the sanction. See State v. Brady, 130 Wis. 2d 443, 447, 388 N.W.2d 151 (1986) ("[A] decision on an issue of law made at one stage of a case becomes a binding precedent to be followed in successive stages of the same litigation." (citation omitted)). Our review on this appeal of the judgment awarding costs and fees for the prior appeal is therefore limited to the amount of the award.
¶5. On remand, the defendants requested $62,404.50 in attorneys' fees and $3,537.70 in costs. The trial court reduced the award to $21,000 in fees and $1,883.03 in costs, limiting recovery to that portion of the litigation directly attributable to the dismissal of Schultz's claims and taking into account her ability to pay with marital assets. Schultz points to nothing in the record that would indicate that the defendants did not in fact reasonably incur those costs and fees, or that the court's evaluation of her assets was erroneous.
¶6. Schultz claims the award represented an excessive fine prohibited by the Eighth Amendment of the United States Constitution. We question in the first instance whether an award of attorney fees to another party constitutes a "fine" within the meaning of the amendment. See Black's Law Dictionary 647 (7th ed. 1999) (defining a "fine" as "[a] pecuniary criminal punishment or civil penalty payable to the public treasury" (emphasis added)); see also State v. Hammad, 212 Wis. 2d 343, 350, 569 N.W.2d 68 (Ct. App. 1997) (recognizing that the Excessive Fines Clause applies to civil forfeiture actions as well as criminal cases, when there is a punitive purpose). Even assuming the Excessive Fines Clause were to apply in this situation, we do not find the amount of the award here "`so excessive and unusual, and so disproportionate to the offense committed, as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.'" Hammad, 212 Wis. 2d at 356 (quoting State v. Seraphine, 266 Wis. 118, 122, 62 N.W.2d 403 (1954)). Subornation of perjury is a very serious matter undermining the integrity of the court system, and the amount of the award here was properly linked to the actual amount of costs and fees incurred by the opposing parties. We see no misuse of the trial court's discretion in setting the amount of the award.

Animal Lobby's Appeal
¶7. Like Schultz, Animal Lobby attempts to relitigate several issues settled by the prior appeal, including whether it was entitled to a jury trial and proof beyond a reasonable doubt before the imposition of sanctions and whether Animal Lobby failed to notify Journal Sentinel of its defamation claims as required by Wis. Stat. § 895.05(2) (2001-02).[2] We will not consider either of those issues on this appeal. See State v. Witkowski, 163 Wis. 2d 985, 990, 473 N.W.2d 512 (Ct. App. 1991) (an appellant may not relitigate matters previously decided, no matter how artfully rephrased). Our review here is limited to the issue that was remanded to the trial court, namely, whether Schultz's conduct could properly be imputed to Animal Lobby, such that Animal Lobby's remaining claims could be dismissed and joint and several liability for the defendants' costs and attorney fees imposed.
¶8. The trial court analyzed whether Schultz's conduct could properly be imputed to Animal Lobby using analogies to two alternate theories: a jury instruction used to determine whether a corporation may be held criminally liable for one of its officer's acts, and the alter ego doctrine (often described as "piercing the corporate veil") used to determine whether an individual officer or shareholder may be held liable for a corporation's debts.
¶9. Wisconsin JI-Criminal 420 provides the following steps for determining the criminal liability of a corporation. First, determine whether an individual person committed the charged crime. Next, determine whether that individual was an agent of the corporation. Finally, determine whether the agent committed the charged crime while acting within the scope of employment. The instruction goes on to provide the following explanation:
Agents are within the scope of employment when they perform acts they have the express or implied authority to perform and their actions benefit or are intended to benefit the interest of the corporation. When agents step aside from acts they are hired to perform and do something for their own reasons or for reasons not related to the business of the employer, their acts are outside the scope of employment.
Id.
¶10. Animal Lobby offers no reason why the trial court could not rely on a corporate agency principle used in criminal law to make its determination here, and suggests no standard that it believes would have been more appropriate. Rather, Animal Lobby contends that once the trial court borrowed from the criminal jury instruction, it erred in the first step of finding that Schultz had committed the "crime" of attempted subornation of perjury, since this court's prior opinion had only affirmed the trial court's finding that Schultz had engaged in "litigation misconduct," not a crime. That contention is entirely unpersuasive.
¶11. The trial court's analogy to a corporate agency standard used in criminal law to determine whether Schultz's actions could be imputed to Animal Lobby did not transform the nature of the sanction proceeding before it into a criminal action. Regardless of its use of the term "crime" rather than "misconduct," the trial court was correct that Schultz's attempted subornation of perjury had been established by prior proceedings. The trial court went on to thoroughly explain why Schultz was an agent of Animal Lobby and why her attempts to suborn perjury were intended to benefit Animal Lobby and should be considered within the scope of her employment. Animal Lobby does not point to any error in the trial court's logic on those points, and we see none. Because we are satisfied that the trial court properly imputed Schultz's conduct to Animal Lobby on the theory that her actions fell within the scope of her employment, we do not address its alternate discussion of the alter ego doctrine.
¶12. Finally, Animal Lobby argues that the trial court erred in failing to hold a hearing to apportion relative liability for the $168,944.97 judgment initially entered against it and Schultz. However, that judgment was reversed with respect to Animal Lobby by our prior appeal. On remand, the parties agreed on the record to limit Animal Lobby's joint and severable liability to $100. Their agreement waived any right to a hearing on the issue. To clarify, Schultz is now solely responsible for all but $100 of the combined $168,944.97 and $22,883.03 in costs and fees awarded to Sykes, Journal Broadcast Group, and Journal Sentinel, while Schultz and Animal Lobby are jointly and severally liable for the remaining $100. We therefore deny Animal Lobby's request for a remand on this issue.
¶13. As in the last appeal, our decision that Animal Lobby's claims were properly dismissed as a sanction for litigation misconduct obviates the need to discuss whether the trial court properly dismissed seventy-eight of the initial eighty claims on summary judgment under the standard applicable to limited purpose public figures.
By the Court.  Judgments affirmed.
NOTES
[1] Schultz's notice of appeal also cites the order dismissing Animal Lobby's claims and holding it jointly and severally liable for $100 of the total attorneys' fees and costs imposed on Schultz. Schultz does not, however, provide any coherent explanation as to how she is aggrieved by that order. She appears to be under the mistaken assumption that the $100 award was a "third" sanction in addition to the amounts previously awarded. In actuality, joint and several liability means that any payments made by Animal Lobby would be deducted from the amount Schultz owes.
[2] All references to the Wisconsin Statutes are to the 2001-02 version unless otherwise noted.