STATE of Wisconsin, Plaintiff-Appellant-Cross-Respondent,†

v.

William W. BOYD, and One White Chevrolet Pickup Truck, VIN 1GCEK14R7WE253553, Defendants-Respondents-Cross-Appellants.

Court of Appeals

*No. 99–2633. Submitted on briefs June 26, 2000.—Decided August 23, 2000.*

## 2000 WI App 208

(Also reported in 618 N.W.2d 251.)

†Petition to review denied.

On behalf of the plaintiff-appellant-cross-respondent, the cause was submitted on the briefs of *Joseph DeCecco,* assistant district attorney of Sheboygan, *Robert J. Wells*, district attorney of Sheboygan, and *James E. Doyle,* attorney general.

On behalf of the defendant-respondent-cross-appellant, the cause was submitted on the brief of *Richard L. Binder* of *Rohde Dales LLP*, Sheboygan.

Before Brown, P.J., Nettesheim and Anderson, JJ.

¶ 1. ANDERSON, J. This case concerns a forfeiture action under WIS. STAT. § 973.075(1)(b)1m (1997–98).[1] The State appeals from a circuit court order concluding that if the entire $28,000 value of William W. Boyd's vehicle were forfeited, the forfeiture would violate the United States Constitution's prohibition of excessive fines. The order thus reduced the forfeited amount to $10,000. Boyd cross-appeals from the order, challenging the court's decision to accept an affidavit based on hearsay information as proof of service. We disagree with the merits of both the appeal and cross-appeal and affirm the order.

## BACKGROUND

¶ 2. Boyd was convicted of felony endangering safety by use of a dangerous weapon contrary to WIS. STAT. § 941.20(2)(a). This conviction arose from events occurring on August 5, 1998. Boyd, angry at the city of Elkhart Lake Police Department because he had been arrested for driving while intoxicated three days before, drove around the police station's block twice, stopped his truck in front of the station, got out of the truck and fired a .22-caliber handgun at the police station's door. He then returned to his truck and drove away. A witness observing the events immediately phoned the authorities.

---

[1] All references to the Wisconsin Statutes are to the 1997–98 version unless otherwise noted.

¶ 3. Boyd was subsequently charged, tried and found guilty in a jury verdict. At the sentencing hearing on December 15, 1998, he was personally served with a summons and complaint for the forfeiture action by Assistant District Attorney Joseph DeCecco in accordance with WIS. STAT. § 973.076. The forfeiture complaint alleged that Boyd's 1998 Chevrolet pickup truck should be forfeited to the State pursuant to WIS. STAT. § 973.075(1)(b)1m because Boyd used it to commit the felony. In his answer to the forfeiture complaint, Boyd argued as an affirmative defense that the State did not properly serve him with the summons and complaint. The State subsequently moved for summary judgment, asserting that no factual disputes remained in the action. Boyd responded with his own summary judgment motion in which he contended that the State's service was improper because DeCecco was a party to the action and that the forfeiture of his truck was an excessive fine. A hearing was held on the motions on April 21, 1999.

¶ 4. At the April 21 hearing, the court granted the parties more time to brief issues raised during the course of the hearing. Following up on the request, Boyd's counsel wrote a May 14 letter to the court where he contended:

> My search of the Court file for this case (98 CV 667) found *no* affidavit of service. My search of the criminal case file (98 CF 407) found a photocopy of a nonauthenticated Summons stamped "Proof of Service" on the front, with stamped and written information on the back . . . . The stamped information is not sufficient to prove service. . . . The required proof of service is not only not in the Court's file, to the extent it does exist it is not in the form of an affidavit and does not contain the infor-

mation required by statute. See § 801.10(4)(a), Stats. . . . Defendant Boyd submits that service and proof of service has failed, and the action should be dismissed.

The court addressed this issue at a May 28, 1999 hearing. It asked DeCecco whether he served an authenticated copy of the summons and complaint on Boyd. Being unfamiliar with service of process in a civil matter, DeCecco admitted that he was unsure whether he served Boyd with an authenticated copy. The court noted that the record was deficient because the State did not file an affidavit or certificate of service. It granted the State additional time to provide an affidavit.

¶ 5. The next hearing was held on June 2, 1999. At that time, the State argued that Boyd had waived his opportunity to contest the authenticity of the service of the summons and complaint because he had not previously raised it. Boyd countered that he questioned the sufficiency of the service of process as an affirmative defense in his answer. He further contended that the affidavit submitted by the State was improper because it was based on hearsay information. Boyd's counsel argued:

> Up until today, we had no affidavit of service, of course, as the Court is well aware. Today we're given an affidavit which is not proper, because it is not based on the personal knowledge of the affiant, so your Honor, I believe that this affidavit is not—is not appropriate and not sufficient.

The court announced its decision on the summary judgment motions shortly thereafter. On the issue of the sufficiency of service, the court found that the State's affidavit adequately proved that the service complied

with the appropriate statutes. It also found that DeCecco was not a party to the action within the meaning of the statutes governing service. Regarding the claim that the forfeiture was an excessive fine, the court determined that this issue was not appropriate for summary judgment and set a fact-finding hearing for the matter.

¶ 6. The hearing on the excessive fine issue was held on September 1, 1999. After hearing the evidence, the court ruled that Boyd's truck, valued at $28,000, should be sold and the first $10,000 from the proceeds should go to the Elkhart Lake police department. The court noted that in reaching this conclusion it had considered and weighed the following factors: the public's interest in stopping weapons from being transported and used in crimes; the fact that there were no injuries and only nominal damage resulting from Boyd's act; its observation that the State usually did not pursue forfeiture in cases that were not drug-related or fourth-offense drunk driving crimes; the truck was registered as a farm vehicle and not used for primarily personal use; there was no lien on the truck, which effectively increased the penalty on Boyd; and the $28,000 forfeiture would be a disproportionate penalty for an offense carrying a maximum fine of $10,000. The State appeals the reduction in the forfeiture amount. Boyd cross-appeals, contesting the court's decision that the proof of service was sufficient.

## DISCUSSION

### Appeal

¶ 7. We begin our discussion by addressing whether the forfeiture of Boyd's $28,000 truck violates

the Excessive Fines Clause of the Eighth Amendment.[2] This is a constitutional issue which we review de novo. *See State v. Hammad*, 212 Wis. 2d 343, 347–48, 569 N.W.2d 68 (Ct. App. 1997). If the goal of a civil forfeiture action is, at least in part, punishment, the forfeiture may not be constitutionally excessive. *See Austin v. United States*, 509 U.S. 602, 610 (1993). We have previously determined that forfeitures under Wis. Stat. § 973.075(1)(b) fall within the purview of the Excessive Fines Clause and are subject to its limitations. *See Hammad*, 212 Wis. 2d at 352.

¶ 8.   Presently, the leading Wisconsin authority on determining whether a civil forfeiture violates the Excessive Fines Clause is *Hammad*. Attempting to clarify which of the "bumper crop of tests" should be used in this state, the *Hammad* court instructed that the multi-factor test in *State v. Seraphine*, 266 Wis. 118, 62 N.W.2d 403 (1954), was the correct analysis to apply. *See Hammad*, 212 Wis. 2d at 355–56. The *Seraphine* standard was explained as:

> In determining whether a fine authorized by statute is excessive in the constitutional sense, due regard must be had to the object designed to be accomplished, to the importance and magnitude of the public interest sought to be protected, to the circumstances and the nature of the act for which it is imposed, and in some instances, to the ability of accused to pay. In order to justify the court in interfering and setting aside a judgment for a fine authorized by statute, the fine imposed must be so excessive and unusual, and so disproportionate to

---

[2] The Eighth Amendment to the United States Constitution proclaims: "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishment inflicted." U.S. Const. amend. VIII.

the offense committed, as to shock public sentiment and violate the judgment of reasonable people concerning what is right and proper under the circumstances.

*Hammad*, 212 Wis. 2d at 355–56 (quoting *Seraphine*, 266 Wis. at 121–22).

¶ 9. The thrust of the State's argument on appeal is that the circuit court incorrectly interpreted the multi-factor *Seraphine* standard when it found that the amount of Boyd's forfeiture was excessive. However, since the *Hammad* court declared that the *Seraphine* standard was the test for this issue, the United States Supreme Court has addressed it and resolved the question of which test should be applied to evaluate if a fine is excessive. That determination was made in *United States v. Bajakajian*, 524 U.S. 321 (1998).

¶ 10. In *Bajakajian,* Bajakajian willfully attempted to remove $357,144 in currency from this country without complying with the requirement in 31 U.S.C. § 5316(a)(1)(A) (1994) to report the removal of sums in excess of $10,000. *See Bajakajian*, 524 U.S. at 324–25. The government seized the entire amount and instituted forfeiture proceedings pursuant to 18 U.S.C. § 982(a)(1) (1994), which authorized the seizure of any property involved in a § 5316 offense. *See Bajakajian*, 524 U.S. at 325. The district court ordered a reduced forfeiture of $15,000, refusing to seize the entire sum on Eighth Amendment grounds. *See id.* at 326. In addition to this forfeiture, the court ordered a sentence of three years of probation and a fine of $5000—the maximum fine under the federal sentencing guidelines. *See id.* The government appealed. *See id.*

¶ 11. To weigh the excessiveness of the forfeiture in the *Bajakajian* appeal, the Supreme Court adopted the standard commonly referred to as "the proportion-

ality test." *See id.* at 333–34. It held that "[t]he touchstone of the constitutional inquiry under the Excessive Fines Clause is the principle of proportionality: The amount of the forfeiture must bear some relationship to the gravity of the offense it is designed to punish." *Id.* at 334. The precise nature of this relationship was described as follows: "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *Id.*

¶ 12.  Applying the proportionality test, the *Bajakajian* Court held that forfeiting the entire $357,144 violated the Excessive Fines Clause. *See id.* at 337. In reaching this conclusion, it first considered the gravity of the offense. *See id.* at 336–37. The Court emphasized Bajakajian's culpability rather than the crime's severity, noting that his crime was "solely a reporting offense." *See id.* at 337. Because Bajakajian did not commit any other illegal activities, the Court stated that he did not fit into the "class of persons for whom the statute was principally designed: He is not a money launderer, a drug trafficker, or a tax evader." *Id.* at 338. The Court also considered that the maximum fine that Bajakajian could have received for his crime was $5,000. *See id.* Additionally, the Court emphasized that Bajakajian's conduct caused minimal harm and "affected only one party, the Government." *See id.* at 339.

¶ 13.  Considering these factors, the Court determined that full forfeiture would be disproportionate to the offense. *See id.* at 339–40. It remarked that full forfeiture would be "larger than the $5,000 fine imposed by the District Court by many orders of magnitude, and it bears no articulable correlation to any injury suffered by the Government." *Id.* at 340.

¶ 14. In the simplest terms, the *Bajakajian* Court applied the proportionality test by considering these factors: the nature of the offense, the purpose for enacting the statute, the fine commonly imposed upon similarly situated offenders and the harm resulting from the defendant's conduct. These factors are strikingly similar, but yet not identical, to those in the *Seraphine* standard.

¶ 15. We will now apply *Bajakajian*'s proportionality test to the present case. Boyd's conduct does constitute a serious offense. With great fortune, the harm from his conduct was minimal; nevertheless, we do not overlook the recklessness and the potential for severe injuries that could have resulted from it. Even so, we are troubled by the disparity in this case between the forfeiture amount, $28,000, and the maximum fine for the crime, $10,000.

¶ 16. The State suggests that when a case concerns a civil forfeiture, the amount of the monetary fine that could be imposed should not be considered. It argues:

> With *in rem* vehicle forfeitures, however, it is the Defendant, and only the Defendant, who decides the value of the vehicle to be forfeited by choosing that vehicle to use in the commission of a felony.

Although we agree that an offender puts his or her property at risk by using it to commit a felony, many cases, in addition to *Bajakajian*, have emphasized that where the value of the forfeited property has greatly exceeded the underlying crime's potential fine, the forfeiture was excessive. *See, e.g., United States v. 18755 N. Bay Rd.*, 13 F.3d 1493, 1498–99 (11th Cir. 1994) (holding that forfeiture of property valued at $150,000

was excessive where the maximum statutory fine was $20,000). Moreover, whether a forfeiture would be far in excess of the maximum fine is a factor appropriately considered under the *Bajakajian* test. *See Bajakajian*, 524 U.S. at 336–37. Even if a forfeiture is greater than the maximum fine, the forfeiture is not automatically deemed excessive. *See id.* n.11. Instead, this circumstance is a factor to be weighed against the others and will only be found to be excessive if the balancing reveals that the forfeiture is "grossly disproportional to the gravity of the defendant's offense." *Id.* at 337.

¶ 17.   Although we acknowledge that Boyd's conduct was a serious offense, we nonetheless conclude that imposing the full forfeiture would be an excessive fine. The harm that Boyd caused was minimal and will be sufficiently satisfied from the reduced forfeiture amount of $10,000. As the State points out, Boyd's conduct was highly unusual "because not many people in Sheboygan County fire shots into police stations." The purpose of the forfeiture statute—to deter offenders from using their vehicles to commit a felony—is not significantly impacted as this is a situation not likely to recur. The full forfeiture amount is also significantly greater than the crime's maximum fine. Weighing all these factors, we hold that a full forfeiture would be grossly disproportionate to the gravity of the offense and affirm the circuit court's reduction of the forfeiture amount.

### Cross-Appeal

¶ 18.   In his cross-appeal, Boyd asserts that the circuit court should have dismissed the forfeiture complaint against him because the State's proof of service was an affidavit utilizing hearsay information. He also

initiates a claim that the affidavit cannot be based on a person's information and belief. The State counters that Boyd has waived these arguments by not specifically raising them before the court reached the merits of the case.

¶ 19. Boyd claims that his argument is properly before the court because: (1) he raised in his answer the affirmative defense that the service of process was inadequate, and (2) the affidavit certifying service was not introduced until the June 2, 1999 hearing, at which Boyd promptly made an objection to its contents. The record reveals that Boyd did object to the affidavit's reliance on hearsay information. The first mention, however, of Boyd's information and belief claim occurs on appeal. Both of Boyd's arguments are similar. The gist of both of these claims is an attack on the adequacy of the affidavit to prove service. For the sake of brevity, we consider these arguments together.

¶ 20. In *Studelska v. Avercamp*, 178 Wis. 2d 457, 460–64, 504 N.W.2d 125 (Ct. App. 1993), we held that in our notice-pleading state, a general objection to service of process in an affirmative defense was sufficient notice to the opposing party that the content of the summons and complaint would later be challenged. Boyd raised this issue as an affirmative defense; therefore, the *Studelska* reasoning supports Boyd's assertion that his claims are not waived. In addition, whether to apply the waiver rule in a particular case is a decision left to this court's discretion. *See County of Racine v. Smith*, 122 Wis. 2d 431, 434, 362 N.W.2d 439 (Ct. App. 1984). We will not apply the waiver rule to Boyd's arguments under the present circumstances.

¶ 21. We now turn to the merits of Boyd's claim. In response to Boyd's challenge to the service of process, the State submitted to the court a "SWORN

AFFIDAVIT OF SERVICE," in which DeCecco averred in relevant part:

> (6) To the best of my knowledge and belief, I served Defendant Boyd with an authenticated copy of the Summons based on the following:
>
> . . . .
>
> (c)   On June 1, 1999, your Affiant spoke with Assistant Clerk of Courts Edie Sagal who stated that the time stamping and affixing the "CV" number on the documents constituted "authentication" as interpreted by the Clerk's office.
>
> (d)   ACC Sagal also informed your Affiant that it is standard procedure to so "authenticate" all civil Summons and Complaints submitted for processing to that office.
>
> (e)   Your Affiant served the Defendant with the Summons and Complaint received from the Clerk's office after processing.

Boyd argues that this affidavit does not conform to the requirements of WIS. STAT. § 801.10(4) because it does not make an "unqualified statement that service of an authenticated copy of the summons was accomplished." He contends that DeCecco is only guessing about whether he served Boyd with an authenticated copy because his declaration states that proper service was done "[t]o the best of [his] knowledge and belief." Moreover, in the affidavit, DeCecco does not rely on his personal knowledge to attest that an authenticated summons was served on Boyd, but instead refers to a third person's knowledge about the clerk's office's processing procedures.

¶ 22.   The requirements for an effective affidavit of service are declared in WIS. STAT. § 801.10(4)(a).

> Personal or substituted personal service shall be proved by the affidavit of the server indicating

the time and date, place and manner of service, that the server is an adult resident of the state of service not a party to the action, that the server knew the person served to be the defendant named in the summons and that the server delivered to and left with the defendant an authenticated copy of the summons. . . . The affidavit or certificate constituting proof of service under this paragraph may be made on an authenticated copy of the summons or as a separate document.

*Id.*

¶ 23.    When resolving a question about the adequacy of service of process, a court has broad discretion regarding what it will consider for proof of the matter. *See Dietrich v. Elliott*, 190 Wis. 2d 816, 826, 528 N.W.2d 17 (Ct. App. 1995). An individual's uncontradicted affidavit certifying that service was made is generally considered adequate proof of service. *Cf. id.* In addition to DeCecco's affidavit, the court also relied on the document's time stamps to establish proof of service. "Specifically in regards to authentication, I think it lends some credence to Mr. DeCecco's argument that in fact the original [summons] was filed at 10:23 and the copies were served at 12:15. I have no doubt that any copy submitted to the clerk was authenticated."

¶ 24.    The State contends that DeCecco's affidavit complied with the requirements in WIS. STAT. § 801.10(4). The affidavit indicated the time, date, place and manner of the delivery of an authenticated copy of the summons; and it stated, the State argues, that DeCecco was an adult state resident who knew who Boyd was. The State further maintains that these averments are all that the statute requires for the certification of service. We agree. Section 801.10(4) does

not state that the affiant has to have firsthand knowledge of how the documents were authenticated, nor does it state that the affiant's statements must be unqualified. All that the statute requires is that the affiant affirm that an authenticated copy of the summons was served. DeCecco's affidavit fulfills this requirement, and, accordingly, we dismiss Boyd's contention to the contrary.

## CONCLUSION

¶ 25.   In summary, utilizing the *Bajakajian* proportionality test, we conclude that a full forfeiture in this case would have been excessive within the meaning of the Excessive Fines Clause of the Eighth Amendment. We also determine that the State's affidavit proving service complied with WIS. STAT. § 801.10(4). Consequently, the order is affirmed.

*By the Court.*—Order affirmed.