STATE of Wisconsin, Plaintiff-Respondent,

v.

ONE 2013, Toyota Corolla/s/le four-door,
LICENSE #437MXR,VIN
#2T1BU4EEXDC038839, ITS TOOLS
AND APPURTENANCES, Defendant,

Steven T. BAUMGARD and Gladys A. Vogel,
Defendants-Appellants.

Court of Appeals

*No. 2014AP2226. Submitted on briefs May 20, 2015.
—Decided October 28, 2015.*

2015 WI App 84

(Also reported in 872 N.W.2d 98.)

On behalf of the defendants-appellants, the cause was submitted on the briefs of *Mark J. Steichen* of *Boardman & Clark LLP*, Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Daniel A. Necci*, district attorney, and *Haley J. Rea*, assistant district attorney of Elkhorn.

Before Neubauer, C.J., Reilly, P.J., and Gundrum, J.

¶ 1. GUNDRUM, J.   Steven T. Baumgard and Gladys A. Vogel appeal from the circuit court's order of forfeiture of the above-captioned 2013 Toyota Corolla. Defendants argue forfeiture of the Toyota pursuant to

W<small>IS.</small> S<small>TAT.</small> § 961.55 (2013–14)[1] is improper because (1) Vogel is an innocent owner of it under the statute and (2) forfeiture violates the Excessive Fines Clause of the Eighth Amendment to the United States Constitution. We conclude the circuit court correctly determined the innocent owner exception to forfeiture does not apply to Vogel. We further conclude forfeiture of the Toyota and Baumgard's financial interest in it is constitutional; however, forfeiture of Vogel's full financial interest in the vehicle is unconstitutional under the Excessive Fines Clause. Accordingly, we affirm in part, reverse in part and remand for further proceedings consistent with this opinion.

## Background

¶ 2. Baumgard was arrested in June 2013 on three counts of selling marijuana, utilizing a vehicle to assist with the sales. The allegations were that he sold 3.43 grams for $60 on April 24, 2013, 3.46 grams for $60 on May 1, 2013, and 3.48 grams for $55 on May 8, 2013, for a total of $175. On June 14, 2013, the Walworth county sheriff's office seized the Toyota, which Baumgard used in conjunction with the latter two sales.[2] Criminal charges were filed against Baumgard in September 2013; all charges were dropped in June 2014 pursuant to a deferred prosecution agreement.

¶ 3. On July 2, 2014, the State commenced this action for forfeiture of the Toyota. Defendants responded that the Toyota should not be forfeited be-

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[2] Baumgard's previous vehicle, which he traded in as part of the purchase of the Toyota, was used in conjunction with the first sale of marijuana.

cause Vogel is an innocent owner of it and forfeiture would violate the constitutional prohibition against excessive fines. The circuit court held an evidentiary hearing, and, at the conclusion of the hearing, determined Baumgard is the actual owner of the Toyota, while Vogel is only a nominal owner, and therefore the innocent owner defense did not apply. The court then concluded that forfeiture of the Toyota would not constitute an excessive fine under the Eighth Amendment. The court ordered the Toyota forfeited, but stayed the order pending this appeal by Baumgard and Vogel. Additional facts are set forth as necessary.

### Discussion

¶ 4. This appeal raises two questions—whether the statutory innocent owner exception to forfeiture applies to Vogel so as to preclude forfeiture of the Toyota and whether forfeiture of the Toyota, and Baumgard's and Vogel's individual financial interests in it, violates the Excessive Fines Clause of the Eighth Amendment.

*Ownership under* WIS. STAT. *§ 961.55 and the "innocent owner" exception*

■■

¶ 5. Pursuant to WIS. STAT. § 961.55(1)(d), a vehicle is subject to forfeiture if it has been used to transport illegal drugs for the purpose of selling the drugs. Section 961.55(1)(d)2. provides for an "innocent owner" exception, stating that "[n]o vehicle is subject to forfeiture under this section by reason of any act or omission established by the owner thereof to have been committed or omitted without the owner's knowledge or consent." To be entitled to the protection of the "innocent owner" exception, a defendant must prove he

or she is the actual owner of the vehicle, not just a nominal owner. *See State v. Kirch*, 222 Wis. 2d 598, 603–07, 587 N.W.2d 919 (Ct. App. 1998); *see also* Wis. Stat. § 961.56(1) ("The burden of proof of any exemption or exception [in this chapter] is upon the person claiming it."). Because the relevant facts in this case are undisputed, we review de novo the application of those facts to the statute and the circuit court's determination that Vogel is not "the owner" of the Toyota for purposes of § 961.55(1)(d)2. *See Showers Appraisals, LLC v. Musson Bros.*, 2013 WI 79, ¶ 21, 350 Wis. 2d 509, 835 N.W.2d 226.

■■

¶ 6.  In *Kirch*, we identified "possession, title, control and financial stake" as relevant factors a court should consider in determining whether a defendant is "the owner" of a vehicle for purposes of the innocent owner exception.[3] *See Kirch*, 222 Wis. 2d at 605–07. Considering these factors and the undisputed evidence presented at the forfeiture hearing, we agree with the circuit court that Vogel is not "the owner" of the Toyota, and therefore the innocent owner exception does not apply in this case.

¶ 7.  The following are the relevant, undisputed facts presented at the forfeiture hearing through docu-

---

[3] In *State v. Kirch*, 222 Wis. 2d 598, 587 N.W.2d 919 (Ct. App. 1998), while we addressed Wis. Stat. § 973.075(1)(b)2. (1995–96), we specifically drew upon Wis. Stat. § 961.55(1)(d)2. (1995–96). *Kirch*, 222 Wis. 2d at 603–05. We concluded that because both statutes "include the same 'innocent owner' defense language, which bars forfeiture if the crime was committed without the property owner's knowledge or consent," "the legislature intended 'owner' to have the same meaning in both provisions." *Id.* at 604–05. We note that the text of the 1995–96 and 2013–14 versions of § 961.55(1)(d)2. are identical in all respects relevant to this case.

ments and the testimony of Vogel and a sheriff's deputy who engaged with Baumgard and Vogel regarding Baumgard's use of the Toyota for selling marijuana.

¶ 8. The deputy testified that he spoke with Baumgard on the day the Toyota was seized, and Baumgard told the deputy he owned the Toyota; he had exclusive use of it, and Vogel did not drive it; he paid for the insurance, gas and maintenance for the vehicle; and Vogel purchased it but he was paying her back. The deputy further testified that when the Toyota was seized, Baumgard took personal items out of it; when he spoke with Vogel over the phone days after the seizure, she did not ask for the return of any personal items from the vehicle; and a record search indicated the Toyota was titled in both Baumgard's and Vogel's names. On cross-examination, the deputy confirmed that Baumgard never stated he was the sole owner of the Toyota.

¶ 9. Vogel testified she is an owner of the Toyota; paid $20,000 toward the purchase of it in April 2013 so Baumgard could go to work and school but Baumgard was supposed to pay her back; Baumgard had made two payments totaling $550 toward paying her back; she and Baumgard were both on the title when the Toyota was purchased less than two months prior to the seizure,[4] but it was Baumgard's address on the title, not hers; and she has a different vehicle of her own and did not have to purchase another as a result

---

[4] On June 17, 2013, three days after the Toyota was seized, Baumgard transferred his title interest over to Vogel, so that title was then held solely in her name. During its ruling, the circuit court discussed this move:

> The fact that he ran and gave up his interest per title three days after it was seized is very telling to the Court of evidence,

of the seizure. She further testified and produced documents showing her payment of the $20,000 for the Toyota and a $2500 credit received on the purchase price due to Baumgard trading in a prior vehicle he owned. She also testified she had no knowledge Baumgard was engaging in any criminal activity with the Toyota and she never consented to his use of it for such activity.

¶ 10. We consider the *Kirch* factors. Based on this record, it is clear Baumgard had nearly complete possession and control of the Toyota. He alone used it; Vogel did not. He paid for the insurance, gas and maintenance for the vehicle. When the Toyota was seized, Baumgard took personal items out of it, and the testimony suggests Vogel had no such items in the Toyota. Further, Baumgard traded in his prior vehicle for the Toyota, and Vogel had a different vehicle of her own and did not have to purchase another as a result of the seizure of the Toyota.

¶ 11. As to title, it is undisputed that when the Toyota was purchased and when it was seized two months later following Baumgard's use of it in multiple drug sales, it was titled in both Baumgard's and Vogel's names, but that the address on the title was Baumgard's not Vogel's. With regard to financial stake, $2500 of the purchase of the Toyota was funded by Baumgard's trade-in of his prior vehicle, while the remaining $20,000 was funded by Vogel with the agreement that Baumgard would pay her back. At the time of the forfeiture hearing, Baumgard had paid $550 to Vogel toward that debt.

acknowledgement, that, oh boy, guilt on his part. He clearly was in possession of it. It was titled in both of their names until a couple of days after the seizure.

¶ 12. We also note that ultimately Baumgard is the one who will suffer most from the forfeiture of the Toyota in that not only will he lose out on the benefit of the money equivalent ($2500 trade-in) he put into the purchase and the $550 he has paid to Vogel, but he will no longer have the Toyota to utilize for his daily transportation needs, whereas Vogel has always had another vehicle of her own. *See United States v. One 1981 Datsun 280ZX*, 563 F. Supp. 470, 475 (E.D. Pa. 1983) (stating that looking to "who would actually suffer from the loss of the vehicle . . . provides an excellent focus for determining ownership in the forfeiture context"); *United States v. One 1971 Porsche Coupe*, 364 F. Supp. 745, 748 (E.D. Pa. 1973) (even though father challenging vehicle forfeiture had purchased vehicle and retained title to it, but had given it to his son, "it is claimant's son who will suffer the loss occasioned by forfeiture, and he was by no means innocent with respect to the prohibited activity").

¶ 13. While Vogel still has the largest financial interest in the Toyota, we have no problem on this record agreeing with the circuit court that Baumgard was the actual owner of the vehicle, and Vogel was merely a nominal owner of it. Thus Vogel has failed to establish she is "the owner" of the vehicle for purposes of the statutory "innocent owner" exception. We must now determine whether forfeiture of the Toyota, while statutorily authorized, constitutes an unconstitutionally excessive fine when applied to the facts of this case.

*Constitutionality of Forfeiture*

■■

¶ 14. "[A] punitive forfeiture violates the Excessive Fines Clause if it is grossly disproportional to the gravity of a defendant's offense." *United States v.*

*Bajakajian,* 524 U.S. 321, 334 (1998). Defendants assert that forfeiture of the Toyota violates the clause; the State argues to the contrary.[5] We review de novo the issue of whether a forfeiture is unconstitutionally excessive. *State v. Boyd,* 2000 WI App 208, ¶ 7, 238 Wis. 2d 693, 618 N.W.2d 251.

■

¶ 15.  In making this determination, we consider the culpability of each owner of the subject property for the crime(s) giving rise to the forfeiture. *See United States v. Ferro,* 681 F.3d 1105, 1115–16 (9th Cir. 2012); *von Hofe v. United States,* 492 F.3d 175, 185 (2d Cir. 2007); *Commonwealth v. 1997 Chevrolet,* 106 A.3d 836, 862, 866 (Pa. Commw. Ct. 2014). Here, the State has named two defendants, Baumgard and Vogel, and we have already concluded that each has some ownership interest in the Toyota. While we recognize that Vogel effectively made a "loan" of $20,000 for the purchase, the terms are fairly informal, such that under the arrangement, as Vogel described it, Baumgard is supposed to "pay [her] what he could." In the year and a half between the purchase of the Toyota and the forfeiture hearing, Baumgard had paid Vogel back only $550 of her $20,000 loan. With this payment, Baumgard then has paid the equivalent of $3050 ($2500 trade-in of prior vehicle plus $550), and Vogel has paid the remainder. As the circuit court recognized, "the primary financial stake issue here falls on Ms. Vogel." Baumgard and Vogel both stand to incur at least some loss from the forfeiture of the Toyota; thus, we consider with regard to each Defendant whether the loss is excessive.

---

[5] The State does not dispute that the Excessive Fines Clause is applicable to this case.

592

¶ 16.   In *Boyd*, we utilized a proportionality test for determining whether a forfeiture is unconstitutionally excessive, considering the nature of the offense, the purpose of the statute, the maximum potential fine for the offense,[6] and the harm that actually resulted from the defendant's conduct. *Boyd*, 238 Wis. 2d 693, ¶¶ 11–17. Considering this test, we conclude forfeiture of the Toyota and Baumgard's financial interest in it is constitutional; however, forfeiture of Vogel's full financial interest in the vehicle is not.

██

¶ 17.   We first consider the proportionality test with regard to Baumgard and begin by analyzing the first and fourth factors of the test—the nature of the offense and the harm resulting from Baumgard's conduct. Defendants argue that "there was no violence; no one was robbed; no one was shot;" and "forfeiture of a $22,500 car in a case involving the sale of $175 of

_____

[6] At one point, the *Boyd* court referred to this third factor as "the fine commonly imposed upon similarly situated offenders." *State v. Boyd*, 2000 WI App 208, ¶ 14, 238 Wis. 2d 693, 618 N.W.2d 251. The *Boyd* court, however, did not actually consider what fine was "commonly imposed upon similarly situated offenders," but instead considered the forfeiture amount in relation to the "the maximum fine" that could have been imposed for the underlying offense. *See id.*, ¶¶ 15–17. Likewise, the Supreme Court in *United States v. Bajakajian*, 524 U.S. 321 (1998), the precedent upon which the *Boyd* court relied for the proportionality test, and this court in *State v. Hammad*, 212 Wis. 2d 343, 569 N.W.2d 68 (Ct. App. 1997), relied upon by Baumgard and Vogel, also considered the amount of the forfeiture in relation to the maximum potential fine for the underlying offenses in those cases. *See Bajakajian*, 524 U.S. at 338–39 & n.14; *Hammad*, 212 Wis. 2d at 357. We also note that the record in this case provides no basis upon which we even could determine "the fine commonly imposed upon similarly situated offenders."

marijuana is patently disproportionate to the offense." The State contends Baumgard's "stipulat[ion] that on three separate occasions he delivered marijuana, contrary to Wis. Stat. § 961.41(1)(h)1 . . . which is a Class I felony . . . is not . . . insubstantial . . . [in that it] is punishable by imprisonment up to three years and six months and/or a fine of not more than $10,000, on each charge." The State also points out that "[e]ach of those three deliveries occurred in a public location, either the Wal-Mart parking lot or the Sentry parking lot, at a time of day when the public would be active in the area [between 11:30 a.m. and 2:00 p.m.]."

¶ 18. While the total amount of illegal drugs Baumgard sold was less than that of many large-scale drug dealers, and the charges were ultimately dropped pursuant to a deferred prosecution agreement, as the State points out, each of Baumgard's sales took place in the middle of the day in parking lots where members of the public would likely be present. And while we certainly recognize that no direct harm to innocent bystanders occurred on these occasions, Baumgard's repeated participation in the sale of drugs would harm not only the user of the drugs he sold but society more generally. Additionally, his sales of drugs in such public locations and at such times of day would inherently create at least some safety risk to others. *See State v. Johnson*, 2007 WI 32, ¶ 29, 299 Wis. 2d 675, 729 N.W.2d 182 (noting "the link between dangerous weapons and the drug trade"). While these two factors do not overwhelmingly support forfeiture of the Toyota and Baumgard's $3050 financial interest in it, they nonetheless do support it.

■

¶ 19. The second and third considerations of the proportionality test—the purpose of the forfeiture stat-

ute and the maximum potential fine for the underlying offense(s)—more strongly support forfeiture. The purpose of the statute is "to deter drug trafficking by permitting confiscation and forfeiture of the means and mobility used" to sell illegal drugs. *See Jones v. State*, 226 Wis. 2d 565, 577, 594 N.W.2d 738 (1999). In that Baumgard utilized the Toyota for two of the three felony drug sales for which he was charged, forfeiture of the vehicle is entirely consistent with the purpose of the statute,[7] as is forfeiture of Baumgard's financial interest in the vehicle, in that forfeiture of that interest will make it more difficult for him to purchase another vehicle for any future illegal drug sales. As to the maximum potential fine, Baumgard faced a potential fine of $10,000 for each of the three offenses with which he was charged. His exposure to fines of up to $30,000 dwarfs the $3050 financial interest he will lose through forfeiture here.

¶ 20. Forfeiture of the Toyota and Baumgard's $3050 financial interest in it does not violate the Eighth Amendment's Excessive Fines Clause.

¶ 21. Forfeiture of Vogel's full financial interest in the Toyota is an entirely different matter. This is not a case where evidence would support the conclusion that a nominal owner of a vehicle, such as Vogel, had knowledge of the actual owner's involvement with illegal drugs and simply took no action to prevent use of the vehicle for such activity. The undisputed testimony was that Vogel had no knowledge of Baumgard's illegal activity and certainly did not consent to it; and

---

[7] As noted, the first offense occurred through use of Baumgard's prior vehicle, with the second two offenses occurring through use of the Toyota. No party suggests this should make any difference in our analysis.

the circuit court so found: "I don't think she knew anything about what [Baumgard] was doing with the car." Thus, Vogel had no culpability and none of the considerations of the proportionality test would support forfeiture of her full financial interest[8] in the Toyota. As a result, forfeiture of her full financial interest, as the circuit court effectively ordered, is necessarily disproportionate and would amount to an unconstitutionally excessive fine.

¶ 22. Based on the foregoing, we conclude that the Toyota is properly forfeited, that $3050 of the proceeds from any sale of the vehicle—Baumgard's direct financial interest—is properly forfeited, but that any remaining proceeds are to be returned to Vogel. This holding balances the purpose of the forfeiture statute with the need to apply the law in a constitutional manner based on the individualized culpability of persons with an ownership interest in the subject property.

### Conclusion

¶ 23. As set forth above, we affirm the circuit court's determination that Vogel was not "the owner" of the Toyota for purposes of WIS. STAT. § 961.55(1)(d), and therefore the innocent owner exception does not apply here. We further affirm the circuit court's determination that forfeiture of the Toyota is constitutional under the Eighth Amendment's Excessive Fines Clause, as is forfeiture of Baumgard's own financial interest in the vehicle. We conclude, however, that

---

[8] We recognize that forfeiture of the Toyota may result in a financial recovery of less than $22,500, and therefore Vogel may ultimately receive less than the full amount Baumgard still owes her. She may address this issue with Baumgard; we do not deem it to be of constitutional significance.

596

forfeiture of Vogel's full financial interest in the Toyota would amount to an unconstitutionally excessive fine, and we reverse the court's order to the extent it authorizes financial forfeiture from the Toyota in excess of $3050—Baumgard's financial interest. Proceeds from forfeiture of the Toyota that exceed $3050 shall be returned to Vogel.

*By the Court.*—Order affirmed in part; reversed in part and cause remanded with directions.

¶ 24. NEUBAUER, C.J. (*concurring*). This case presents an issue of first impression: whether the innocent owner defense in a forfeiture action under Wis. Stat. § 961.55(1)(d)2. applies to an innocent co-owner. Analysis of the forfeiture statute, *State v. Kirch*, 222 Wis. 2d 598, 587 N.W.2d 919 (Ct. App. 1998), as well as persuasive federal and state authority addressing the same or similar statutory language leads me to conclude that under § 961.55(1)(d)2. "the owner" includes a co-owner and that an "innocent" co-owner is protected to the extent of his or her interest in the property. This straightforward statutory approach avoids the need to address the forfeiture of an innocent co-owner's financial interest as an unconstitutional excessive fine.

¶ 25. In Wisconsin, a vehicle that is used in connection with a drug-related offense is subject to forfeiture. Wis. Stat. § 961.55(1)(d). However, "[n]o vehicle is subject to forfeiture under this section by reason of any act or omission established by *the owner* thereof to have been committed or omitted without the owner's knowledge or consent." Sec. 961.55(1)(d)2. (emphasis

added).[1] Forfeitures "shall be made with due provision for the rights of innocent persons" under subd. (1)(d)2. Sec. 961.55(3). All persons who have or may have "an interest" in the property shall be given notice of a hearing to hear all claims to its "true ownership." *Id.* Thus, the question is whether the legislature intended for "the owner" to include a "co-owner." The goal of statutory construction is to give effect to the intent of the legislature, which requires one to focus on the statutory language. *State ex rel. Kalal v. Circuit Court for Dane Cty.*, 2004 WI 58, ¶ 45, 271 Wis. 2d 633, 681 N.W.2d 110. As the court in *Kirch* concluded, the undefined term "owner" is ambiguous. *Kirch*, 222 Wis. 2d at 604. When a term is ambiguous we may look to the object of the statute to discern legislative intent, as well as other sources. *Id.*[2]

¶ 26.   The majority looks to *Kirch* for guidance in determining whether Baumgard or Vogel is "the owner" for purposes of the innocent owner defense, concluding that "the owner" has to be one or the other. The majority's analysis that there can be only one owner appears to turn on the use of "*the* owner" in the statute and repeated in *Kirch*. But, it is a codified rule of statutory construction that "[t]he singular includes the plural . . . ." Wis. Stat. § 990.001(1); *see In re Forfeiture of One 1970 Ford Pickup Truck*, 823 P.2d 339, 341 (N.M. Ct. App. 1991). The statute permits more than one owner.

¶ 27.   In *Kirch* we determined that the factors to be considered to determine ownership include "posses-

---

[1] The State does not dispute that Baumgard committed the drug offenses without Vogel's knowledge or consent. Wis. Stat. § 961.55(1)(d)2.

[2] I agree with the majority that the analysis of "owner" in *Kirch* is applicable to the forfeiture statute. Majority, ¶ 6 fn.3.

sion, title, control and financial stake." *Kirch,* 222 Wis. 2d at 606–07. The federal cases cited for application of the multifactor analysis recognize an innocent owner defense to the extent of the owner's interest.[3] *Id.* An "owner" may include a person with only a partial or shared interest in property. *Owner,* BLACK'S LAW DICTIONARY (10th ed. 2014) (owner defined as "[s]omeone who has the right to possess, use, and convey something; a person in whom one or more interests are vested. An owner may have complete property in the thing or may have parted with some interests in it."). It is common for one person to use the property, while two are on the title and have a financial stake.

¶ 28. The majority relies on *Kirch* to conclude that Vogel is a "nominal owner," when she in fact is on the title and has a significant financial stake. However, a nominal owner is one "existing in name only." *Nominal,* BLACK'S, *supra.* In *Kirch* and the federal cases we cite and upon which the majority relies, the "nominal owner" had *no* financial stake: the claimants had no indicia of ownership beyond bare legal title. *Kirch,* 222 Wis. 2d at 605–06. These cases do not address a co-owner who is, in fact, *not* a nominal owner.

¶ 29. In *Kirch* we favorably cited the federal statute that provided an exception for property from forfeiture "to the extent of an interest of an owner, by reason of any act or omission established by that owner to have been committed or omitted without the knowledge or consent of that owner." *Id.* at 605 n.2 (citing 21

---

[3] *United States v. Real Prop. & Improvements Located at 5000 Palmetto Drive,* 928 F.2d 373, 375 (11th Cir. 1991); *United States v. One Parcel of Prop. Located at Route 27, Box 411 (Patterson Rd.),* 845 F. Supp. 820, 824 (M.D. Ala. 1993); *United States v. One 1986 Chevrolet Monte Carlo,* 817 F. Supp. 729, 732 (N.D. Ill. 1993).

U.S.C. § 881(a)(7)). Subsequently, in 2000, Congress passed the Civil Asset Forfeiture Reform Act (CAFRA), 18 U.S.C. § 983, which replaced a number of federal forfeiture statutes. With CAFRA, Congress provided an innocent owner "defense for all federal civil forfeitures, to make that defense uniform, and to ensure that it offers protection in all appropriate cases." H.R. REP. No. 106–192, at 15 (1999).[4] As part of the innocent owner defense, CAFRA took into account that an innocent owner may have only a "partial interest in property . . . a joint tenancy or tenancy by the entirety." 18 U.S.C. § 983(d)(5) (2012). In those circumstances, a court is given three different options in fashioning an appropriate remedy that account for the interests of the federal government and the innocent owner, to the extent of the co-owner's interest. *See* 18 U.S.C. § 983(d)(5)(A), (B), & (C). Thus, under federal forfeiture statutes, the innocent owner defense discussed in *Kirch* was and is available to protect a co-owner to the extent of his or her interest.

¶ 30. Similarly, a number of state courts interpreting the same or similar statutory language as that provided in Wisconsin's forfeiture statute have concluded that "the owner" recognizes innocent co-owners. Like in Wisconsin, Delaware provides that "[n]o vehicle is subject to forfeiture under this section by

---

[4] Earlier, the U.S. Supreme Court had intimated that the forfeiture of a truly innocent owner's property would raise "serious constitutional questions." *Calero-Toledo v. Pearsing Yacht Leasing Co.*, 416 U.S. 663, 688–89 (1974). In *Bennis v. Michigan*, 516 U.S. 442 (1996), in reviewing a Michigan forfeiture statute, the Court concluded that lack of an innocent owner defense in the statute did not offend the U.S. Constitution. *Id.* at 446, 451–53. However, significant for the Court in *Bennis* was that the Michigan statute gave the trial court "remedial discretion." *Id.* at 444, 453.

reason of any act or omission established by *the owner* thereof to have been committed or omitted without the owner's knowledge or consent." DEL. CODE ANN. tit. 16, § 4784(a)(4)b. (West 2015) (emphasis added). In *In re One 1986 Pontiac Firebird*, 687 A.2d 190, 191–92 (Del. 1997), the Delaware Supreme Court looked to the federal courts and other states, and found that the majority of courts addressing the innocent owner defense have interpreted owner to include a co-owner and to protect a co-owner to the extent of his or her interest in the forfeited property. This approach was "best designed to accomplish the overall purpose of deterring drug-related activity while protecting innocent property owners." *Id.* at 192.

¶ 31.   Similarly, in *State v. Jackson*, 399 S.E.2d 88 (Ga. Ct. App. 1990), at issue was Georgia's forfeiture statute, which then provided that "[n]o conveyance is subject to forfeiture under this Code section by reason of any act or omission established by *the owner* thereof to have been committed or omitted without his knowledge or consent." *Id.* at 90 (emphasis added) (quoting GA. CODE ANN § 16–13–49).[5] The court noted that the statute did not explicitly address the forfeiture of co-owned property, leaving the term "owner" ambiguous. The intent of the legislature, though, was to dispose of property subject to forfeiture promptly, while protecting the property interests of innocent owners. *Id.* at 90. Giving effect to those balanced interests led the court to the "logical" construction "that the legislature intended ['owner'] to apply to owners to the extent of their interest in property subject to forfeiture." *Id.* This construction, the court noted, "would allow the State to condemn the property

---

[5] In 2015, Georgia amended its forfeiture law. 2015 Ga. Laws 98.

interests of wrongdoers, and those otherwise failing to qualify as innocent owner under the statute, while at the same time preserving the interests of innocent owners." *Id.* The court found that a construction that was consistent with the intention of the legislature allows "forfeiture of the property interest of the wrongdoer and those who knew or should have known of the criminal use of the property, and provides protection to innocent owners to the extent of their property interest." *Id.* at 91; *see In re Forfeiture of 1985 Ford Ranger Pickup Truck*, 582 So. 2d 3, 4 (Fla. Dist. Ct. App. 1991) (holding that an "innocent owner" under the Florida Contraband Forfeiture Act need not be the owner of the whole property where the ownership is divisible and the property is susceptible of division in kind or sale and division of proceeds; "The State certainly should have the right to proceed against the property; however, the State is not entitled to take the property of one who did no wrong and knew of no wrong."), *aff'd,* 598 So. 2d 1070 (Fla. 1992); *In re Forfeiture of One 1970 Ford Pickup Truck*, 823 P.2d at 341 (by construing "the owner" to protect co-owners the court found that it was "furthering the intent of the legislature" to protect owners who did not participate in or have knowledge of the illegal uses to which their property was put, "consistent with the language of the statute").

¶ 32. Like these other jurisdictions, the plain language of Wɪs. Sᴛᴀᴛ. § 961.55 demonstrates that the intent of the legislature is to deter and punish drug trafficking by permitting the forfeiture of vehicles used in connection with drug-related offenses, while protecting the interests of innocent parties. *State v. Fouse,* 120 Wis. 2d 471, 477–79, 355 N.W.2d 366 (Ct. App. 1984). The statute provides that all forfeitures "shall be made with due provision for the rights of innocent

persons" under subd. (1)(d)2.[6] Sec. 961.55(3). All persons with "an interest in the property" shall be given notice of the hearing on claims to determine the property's "true ownership." *Id.* Giving notice to all persons with "an interest" in the property, but then ignoring the ownership interest of an innocent co-owner would defeat the "rights of innocent persons" and "true" owners, contrary to the statute's directives. The provisions of § 961.55(3) require due provision for the rights of an innocent co-owner—to the extent of his or her interest.[7]

¶ 33.   The majority's analysis forces a conclusion that one co-owner is the only "actual owner," and employs the fiction that the other with a financial stake is a "nominal owner," when neither is the case. This artificial analysis *undermines* the intent of the legislature by potentially precluding the forfeiture of co-owned vehicles. Considering the practical realities of ownership as reflected in that word's very meaning, that the singular includes the plural, and the intention

---

[6] This language, which is not included in the statutes of the states already discussed, is further evidence of the legislature's desire to protect the rights of innocent persons.

[7] In *State v. Fouse*, 120 Wis. 2d 471, 355 N.W.2d 366 (Ct. App. 1984), we considered only whether persons who had an unperfected security interest in a vehicle subject to forfeiture could claim protection as "innocent persons" even though such an interest was not enumerated in the statute. We held that they could claim protection. In response to our decision, the legislature amended then WIS. STAT. § 161.55(3) for the express purpose of limiting the rights of innocent persons to those persons delineated in the subdivisions of the statute, including subd. (1)(d)2. *State v. One 2010, Nissan Altima*, No. 2013AP2176, unpublished slip op. ¶ 14 n.5 (WI App June 11, 2014). Neither *Fouse* nor the amendment that followed addressed the issue of whether a co-owner is included within the term "the owner" in subd. (1)(d)2.

of the legislature, "the better reasoned approach" is to construe the ambiguous "the owner" to include innocent co-owners. *Jackson*, 399 S.E.2d at 91. This construction allows forfeiture of the property interest of the wrongdoer and those who knew or should have known of the criminal use of the property, and provides protection to innocent owners to the extent of their property interest.

¶ 34.  The next issue is whether Vogel qualifies as a co-owner, since it is undisputed that she is "innocent." As noted above, relevant factors a court must consider are "possession, title, control and financial stake." *Kirch*, 222 Wis. 2d at 606. In addition to having her name on the title, Vogel had, as the circuit court found, "the primary financial stake" in the Toyota. She paid $20,000 toward the $23,320 purchase price, which Baumgard had started to repay when the vehicle was seized. The majority, while acknowledging that Vogel has the largest financial interest in the vehicle, is persuaded that Vogel is not "the owner" because it is Baumgard who will "suffer most" from the forfeiture, Majority, ¶ 12, but, if Vogel was truly a mere "nominal owner," then why would she suffer at all? As already discussed, "the owner" includes a co-owner, and that interpretation prevents an innocent owner with a financial stake in the property from suffering at all. Therefore, for the foregoing reasons, I conclude that Vogel has met her burden to establish that she is a co-owner entitled to the protection of Wis. Stat. § 961.55(1)(d)2.

¶ 35.  Because this appeal can be decided using a straightforward construction of the statute, I need not address whether the forfeiture is constitutionally ex-

cessive as to Vogel.[8] When possible this court will avoid deciding a constitutional question if the case can be decided on other grounds. *State v. Halmo*, 125 Wis. 2d 369, 374 n.5, 371 N.W.2d 424 (Ct. App. 1985). Application of the innocent owner defense to a co-owner avoids the problem of a governmental taking of property belonging to a truly innocent owner, which would "give rise to serious constitutional questions." *Calero-Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 689 (1974).

¶ 36.  I conclude that the term "owner" under the innocent owner defense of Wis. Stat. § 961.55(1)(d)2. includes a "co-owner," Vogel is a co-owner and, thus, should receive the protection of the statute to the extent of her ownership interest in the vehicle. To that end, I would remand this forfeiture matter with directions for the circuit court to determine the extent of her interest in the vehicle and to fashion an appropriate remedy taking into account the State's interest in Baumgard's portion of the vehicle and her interest in the vehicle.

---

[8] I agree with the majority that forfeiture of Baumgard's interest is not an excessive fine.