BLANCHARD, J.
*598 ¶1 The State of Wisconsin appeals the circuit court's summary judgment order dismissing the State's civil forfeiture complaint naming Michael Scott, Lori Scott, *631 one car, one pickup, one all-terrain vehicle, two personal watercraft, cash, and marijuana. The State seeks a judgment awarding the non-drug property to the State. Police seized the property from in or around the Scotts' residence during the execution of a search warrant as part of a criminal investigation. The State pursued criminal cases against the Scotts and, separately, this forfeiture action based on WIS. STAT. §§ 961.55 and 961.555 (2015-16).[1] These statutes create a process for civil forfeiture of property that has allegedly been used in *599 violation of, or derived from violations of, Chapter 961 of the Wisconsin Statutes, the Controlled Substances Act.
¶2 In the criminal cases, the circuit court excluded all of the evidence seized by the State based on a determination that the State violated the Fourth Amendment in obtaining the search warrant, based on a lack of probable cause in the warrant affidavit. In this forfeiture action, the Scotts moved for summary judgment based on the Fourth Amendment violation in the criminal cases. The court granted the summary judgment motion, based on a determination that all of the seized evidence must be excluded at trial under One 1958 Plymouth Sedan v. Pennsylvania , 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (Fourth Amendment exclusionary rule applies to state civil forfeiture proceedings that are of a "quasi-criminal nature").
¶3 The State argues that we should "decline to extend" Plymouth Sedan to civil forfeiture actions, such as this one, that are brought under WIS. STAT. §§ 961.55 and 961.555. We disagree. As we explain below, the exclusionary rule applies to civil forfeiture actions of this type because, under Plymouth Sedan , they are "quasi-criminal" actions intended to penalize criminal conduct.
¶4 The State makes an alternative argument in the event that the exclusionary rule applies. Specifically, the State argues that it is entitled to raise a new argument that would defeat suppression, namely, that the good-faith exception to the exclusionary rule applies. The Scotts fail to address this argument, which the State did not make in the criminal cases. In the absence of adversarial briefing, we do not resolve as a general matter whether the State may, in a civil forfeiture action, make arguments against the application *600 of the exclusionary rule that were not made in a related, prior criminal action. Rather, we treat the lack of a response by the Scotts as a concession and, on that basis, remand to the circuit court for further proceedings in which the State may attempt to pursue an argument based on the good-faith exception.
¶5 Accordingly, we reverse the order granting summary judgment and remand for the court to consider whether the State may proceed with a good-faith exception argument.[2]
*632 BACKGROUND
¶6 The following allegations are made in the forfeiture complaint in this civil action. The complaint was filed by a district attorney and supported by an accompanying affidavit of a sheriff's office deputy. There is no dispute about any of these facts for purposes of summary judgment. Police executed a search warrant issued by a circuit court judge authorizing *601 a search of the Scotts' residence "for evidence of the manufacture and possession of tetrahydrocannabinols with intent to deliver." The property listed in the caption of this case was seized during the search. Michael and Lori Scott are alleged to have used the property to facilitate drug crimes. The Scotts are represented by the same attorneys and have filed a single appellate brief that draws no distinction between the two of them that matters to issues we resolve.
¶7 The complaint alleges that the car, pickup, and all-terrain vehicle are subject to seizure and forfeiture under WIS. STAT. § 961.55(1)(d), (2), and should "be condemned as forfeited to the Green County Sheriff's Department, for the official use of the Green County Sheriff's Department," pursuant to § 961.55(5)(a), (b), because they were used to commit violations of Chapter 961. The complaint further alleges that all of the seized motorized vehicles are subject to seizure and forfeiture under § 961.55(1)(f), (2), because they are proceeds derived directly or indirectly from the commission of a violation of Chapter 961, and that the currency and personal watercraft must be forfeited pursuant to § 961.55(5)(e), "as property and monies, directly or indirectly derived from or realized through the commission of any crime specified in Chapter 961 Wisconsin Statutes, in accordance with provisions of [ WIS. STAT. §] 961.555."[3]
*602 ¶8 Separate from this civil forfeiture action, the Scotts were individually charged in criminal cases alleging marijuana-related offenses. The proceedings in the criminal cases were conducted separately from those in the forfeiture action. However, it is undisputed that the criminal complaints and the forfeiture complaint relied on the same police investigation, and that the alleged factual bases for the forfeiture involved the same conduct that was alleged in the criminal cases.
¶9 The criminal cases proceeded ahead of the forfeiture case. See WIS. STAT. § 961.555(2)(a) (court "shall" grant request by defendant in forfeiture proceeding "that the forfeiture proceedings be adjourned until after adjudication of any charge concerning a crime which was the basis for the seizure of the property"). In the criminal cases, the court determined that the deputy submitted an inadequate statement of probable cause in the affidavit for a search warrant. As a result, the court concluded that police had seized the evidence in violation of the Fourth Amendment, and granted defense motions to suppress all of the seized evidence. The State did not appeal the court's suppression ruling and voluntarily moved for dismissal of the *633 criminal charges, which the court granted. The State does not, in this civil action, purport to challenge the court's determination that the affidavit lacked probable cause.
¶10 The suppression ruling in the criminal cases provided the Scotts with the basis for the summary judgment motion in the forfeiture case that is the focus of this appeal. The Scotts contended that, under Plymouth Sedan , the exclusionary rule applies in the *603 forfeiture action, and therefore no evidence obtained as a result of the unlawful search and seizures can be admitted in this action to prove that drug crimes were committed. It follows, according to the Scotts, that suppression of this evidence necessarily prevents proof that the seized items were used in, or derived from, drug crimes and therefore dismissal of this action is required.
¶11 The State opposed this motion on various grounds. This included an argument that the State did not make in the criminal case: even if the exclusionary rule would otherwise bar admission of the seized property as evidence, the good-faith exception applies to permit admission in this civil action.
¶12 Relying on Plymouth Sedan , the circuit court granted the Scotts' motion for summary judgment based on exclusion of the evidence and dismissed the forfeiture complaint. Separately, with little discussion and without permitting an evidentiary hearing, the court rejected the State's argument that it was entitled to try to prove that the good-faith exception to the exclusionary rule applies to save the action. The State appeals.
DISCUSSION
¶13 We review a circuit court's summary judgment decision using the same methodology as the circuit court. Lambrecht v. Estate of Kaczmarczyk , 2001 WI 25, ¶21, 241 Wis. 2d 804, 623 N.W.2d 751. Summary judgment is appropriate when there are no genuine issues of material fact and a party is entitled to judgment as a matter of law. WIS. STAT. § 802.08(2). The interpretation and application of case law and *604 constitutional principles to a set of facts present issues of law that we decide de novo. See Meyers v. Bayer AG , 2007 WI 99, ¶22, 303 Wis. 2d 295, 735 N.W.2d 448.
¶14 Determinations of the United States Supreme Court on issues of federal law bind state courts. State v. Mechtel , 176 Wis. 2d 87, 94, 499 N.W.2d 662 (1993).
¶15 The State does not argue that summary judgment is inappropriate if the seized evidence is excluded. This leaves two potential issues. The first is whether, as the Scotts argue, the exclusionary rule applies to this type of civil forfeiture action. If so, the second issue is whether, as the State contends, it is entitled to attempt to show that the good-faith exception to the exclusionary rule applies.
¶16 On the first issue, we conclude that Plymouth Sedan is good law that applies here, because it establishes that statutes that require the forfeiture of property as effective penalties for criminal law violations create quasi-criminal proceedings and therefore Fourth Amendment protections apply to such proceedings. On the second issue, "good faith," we do not decide the merits and instead remand based on the absence of developed arguments. On remand, we discern no reason why the State could not at least attempt to establish that it is entitled to an evidentiary hearing on whether the good-faith exception to the exclusionary rule applies. However, we take no position as to any argument that either party may make on this topic.
*634 I. Exclusionary Rule
¶17 We begin by quoting a summary of the exclusionary rule, then turn to the Plymouth Sedan *605 opinion and subsequent United States Supreme Court precedent. We explain our conclusions that Plymouth Sedan controls here and that the State's arguments to the contrary are unavailing. The State appears to question the wisdom or the practicality of Plymouth Sedan , but we are not free to disregard federal law pronounced by the Supreme Court based on policy preferences. See Mechtel , 176 Wis. 2d at 94, 499 N.W.2d 662 ; see also United States v. Hatter , 532 U.S. 557, 567, 121 S.Ct. 1782, 149 L.Ed.2d 820 (2001) (" '[I]t is [the Supreme Court's] prerogative alone to overrule one of its precedents.' ") (quoted source omitted).
¶18 The supreme court of our state has provided the following succinct summary of the exclusionary rule:
The [U.S.] Supreme Court first applied the exclusionary rule to protect against violations of Fourth Amendment rights in Weeks v. United States , 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914). Under the exclusionary rule, evidence obtained in violation of the Fourth Amendment is generally inadmissible in court proceedings. Mapp v. Ohio , 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). The [C]ourt has explained that "[t]he exclusionary rule operates as a judicially created remedy designed to safeguard against future violations of Fourth Amendment rights through the rule's general deterrent effect." Arizona v. Evans , 514 U.S. 1, 10, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995).
State v. Scull , 2015 WI 22, ¶20, 361 Wis. 2d 288, 862 N.W.2d 562 (third alteration in original).
¶19 In Plymouth Sedan , law enforcement officers of a state liquor control board stopped and searched a sedan after noticing that the rear of the sedan was riding low. Plymouth Sedan , 380 U.S. at 694, 85 S.Ct. 1246. The officers lacked a reasonable basis under the Fourth Amendment to execute the search. See id. During the unlawful search, the officers found cases of *606 liquor that lacked tax seals required by law. Id. The officers arrested the driver and seized the sedan. Id.
¶20 The state sought to obtain the sedan through a forfeiture action filed under a state statute. Id. at 694 & n.2, 85 S.Ct. 1246. The statute provided in pertinent part: "No property rights shall exist[ ] in any ... vehicle ... used in the illegal ... transportation of liquor, ... and the same shall be deemed contraband and proceedings for its forfeiture to the [state] may ... be instituted ...." Id. at 694 n.2.
¶21 The sedan owner moved to dismiss the forfeiture action, arguing that police had seized evidence (the cases of liquor) necessary for the state to prove that the vehicle had been used to illegally transport liquor in violation of the Fourth Amendment and therefore this evidence must be suppressed in the forfeiture action under the exclusionary rule. Id. at 694-95, 85 S.Ct. 1246. After the state's highest court reversed the trial court's suppression order, the Supreme Court granted certiorari "to consider the important question of whether the constitutional exclusionary rule enunciated in [ Weeks and Mapp ] applies to forfeiture proceedings of the character involved here." Id. at 695-96, 85 S.Ct. 1246. Answering yes, the Court held that, because the sedan would become subject to seizure in what the court described as a "quasi-criminal" proceeding, the exclusionary rule applied. Id. at 696, 85 S.Ct. 1246.
¶22 In reaching this decision, the Supreme Court relied heavily on Boyd v. United States , 116 U.S. 616, 6 S.Ct. 524, 29 L.Ed. 746 (1886), overruling on other *635 grounds recognized by Fisher v. United States , 425 U.S. 391, 407-09, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976). See Plymouth Sedan , 380 U.S. at 696-703, 85 S.Ct. 1246. In Boyd , government agents seized imported plate glass based on the allegation that the importer had used false invoices to avoid paying customs duties on the glass in *607 violation of a customs statute. Boyd , 116 U.S. at 617, 6 S.Ct. 524. In addition to fines and imprisonment, violations of the customs statute were to be punished by the forfeiture of the merchandise about which the importer had lied. Id. The government brought a civil forfeiture action seeking to obtain the glass. Id. at 617-19, 6 S.Ct. 524. At the forfeiture trial, the prosecutor used a subpoena to compel the defendant to produce the invoice at issue. Id. The trial court granted a judgment of forfeiture, which the importer appealed, arguing that the compulsory production of the importer's private books and records for use as evidence against him violated the Fourth Amendment as an unreasonable search and seizure.[4] Id. at 618, 621, 6 S.Ct. 524. The Supreme Court agreed and remanded the case for a new trial. Id. at 638, 6 S.Ct. 524.
¶23 As highlighted in Plymouth Sedan , the Court in Boyd addressed the civil nature of the proceeding in Boyd using the following terms:
"The [forfeiture] information, though technically a civil proceeding, is in substance and effect a criminal one.... As, therefore, suits for penalties and forfeitures, incurred by the commission of offenses against the law, are of this quasi criminal nature, we think *608 that they are within the reason of criminal proceedings for all the purposes of the fourth amendment of the constitution ...."
Plymouth Sedan , 380 U.S. at 697-98, 85 S.Ct. 1246 (quoting Boyd , 116 U.S. at 634, 6 S.Ct. 524 ); see also id. at 700, 85 S.Ct. 1246 (observing that Boyd "aptly pointed out" that "a forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law."). Under this formulation in Boyd , reaffirmed in Plymouth Sedan , statutes that require the forfeiture of property as effective penalties for criminal law violations are quasi-criminal, and therefore merit Fourth Amendment protection.
¶24 Any other rule, the Court explained, would create the anomaly that the remedy of the exclusionary rule would apply in only some proceedings seeking to penalize criminal activity and not in others. See Plymouth Sedan , 380 U.S. at 701, 85 S.Ct. 1246 ("It would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the [civil] proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible.").
¶25 The United States Supreme Court has not overruled Plymouth Sedan . To the *636 contrary, the Court cited Plymouth Sedan in two 1993 decisions for the proposition that the Fourth Amendment places restrictions on civil forfeitures. See United States v. James Daniel Good Real Property , 510 U.S. 43, 49, 114 S.Ct. 492, 126 L.Ed.2d 490 (1993) (citing Plymouth Sedan for the "holding that the exclusionary rule applies to civil forfeiture"); Austin v. U.S. , 509 U.S. 602, 608 n.4, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993).[5] *609 ¶26 There are differences between the facts and statutory scheme in Plymouth Sedan and those in the instant case. But, as we now explain, the similarities matter more than the differences under the core reasoning expressed in Plymouth Sedan .
¶27 There is no reasonable dispute that an action of the type at issue here is, in the words of Plymouth Sedan , intended "to penalize for the commission of an offense against the law." 380 U.S. at 700, 85 S.Ct. 1246. The State fails to engage on the point, but the Scotts properly note that there is a clear punitive purpose behind a statute that permits "forfeiture of a vehicle 'used to transport any property or weapon used or to be used or received in the commission of any felony.' " See State v. Hammad , 212 Wis. 2d 343, 351, 569 N.W.2d 68 (Ct. App. 1997) (citing Austin , 509 U.S. at 620, 113 S.Ct. 2801 ).[6]
*610 ¶28 As the Court in Plymouth Sedan notes, the state civil forfeiture provision at issue in that case "requir[ed] the determination that the criminal law has been violated." Plymouth Sedan , 380 U.S. at 701, 85 S.Ct. 1246. In particular, the provision at issue there required that the item sought to be seized had been "used" in the commission of the crime. Id. at 694 n.2, 85 S.Ct. 1246 (quoting state law provision that forfeiture was merited when property was "used in the ... illegal transportation of liquor"). But the reasoning of the Plymouth Sedan Court does not hinge on whether the property is subject to seizure because it was used in the commission of the crime. Rather, as summarized above, the Court holds that a civil forfeiture action to obtain property based on proof of criminal conduct is quasi-criminal for Fourth Amendment purposes because "[i]ts object, like a criminal proceeding, is to penalize for the commission of an offense *637 against the law." See id. at 700, 85 S.Ct. 1246. This is the case here, where the commission of a felony under WIS. STAT. ch. 961 (the Uniform Controlled Substances Act) is an explicit element of forfeiture claims alleged by the State in the forfeiture complaint. See WIS. STAT. §§ 961.55(1)(d), (f), 961.555(3). As we have summarized above, the forfeiture complaint here relies on allegations that the property subject to forfeiture was either "used in violation" of the Controlled Substances Act or was derived from such violations. See §§ 961.55(1)(d), (f), and 961.555. *611 ¶29 The State asserts, quoting language from a Texas court opinion, that WIS. STAT. § 961.55" 'does not require any proof that a person committed a crime.' " See State v. One (1) 2004 Lincoln Navigator , 494 S.W.3d 690, 698 (Tex. 2016) (quoted source omitted). The first problem with the State's argument is that, in making this point, the Texas court appears to rely on a feature of Texas law that defines as contraband for forfeiture purposes those items that are either " 'used or intended to be used in the commission of' " specified crimes. See id. at 696 (quoting TEX. CODE CRIM. PROC. art. 59.01(2)(B) ) (emphasis added). This "intent to use" standard, without a requirement of proof of actual use, has no analogue in WIS. STAT. § 961.55. Moreover, we question the significance, in this context, of the difference between an allegation that an item was used to commit a crime and an allegation that it was intended to be used to commit a crime.
¶30 In any case, however, putting Texas law to the side, the State's assertion that WIS. STAT. § 961.55 does not require proof that a person committed a crime is meritless. The State simply cannot prove that property was used in violation of the Controlled Substances Act or derived from a violation without proving that some person or persons violated the Act. Such proof is required, regardless how strong or weak the evidence might be linking violations of the Act to any particular individual.
¶31 The State contends that WIS. STAT. §§ 961.55 and 961.555"create only civil forfeiture proceedings" that are tied to violations of the Act, in contrast to the "general sentencing provisions," WIS. STAT. §§ 973.075 and 973.076, which "create both civil and criminal forfeiture proceedings applicable to property used in a variety of crimes." We have difficulty *612 tracking the State's argument contrasting §§ 961.55 and 961.555 with §§ 973.075 and 973.076. But the gist appears to be that the exclusionary rule cannot apply here because this forfeiture action is civil in nature. We fail to see what such an argument could add to arguments by the State that we reject elsewhere. Plymouth Sedan , the Boyd case on which it relies, and this case are all civil proceedings. See Plymouth Sedan , 380 U.S. at 695, 697, 85 S.Ct. 1246. In all three cases, the government seeks to take possession of assets because the assets are tied to violations of criminal law, not for any other reason, such as that the assets pose inherent dangers to the public or are for some other reason deemed contraband.
¶32 The State properly concedes that most federal and state courts that have addressed the issue in published opinions have concluded, following Plymouth Sedan , that the exclusionary rule applies to civil forfeiture proceedings of the type at issue here. See, e.g. , One 1995 Corvette v. Mayor and City Council of Baltimore , 353 Md. 114, 724 A.2d 680 (1999) (exclusionary rule applies in civil forfeiture proceedings); In re 650 Fifth Ave. & Related Properties , 830 F.3d 66, 98 (2d Cir. 2016) ("It is well-established that the Fourth Amendment's exclusionary rule applies in forfeiture *638 cases") (citing authority that includes Plymouth Sedan and Austin ).
¶33 Nonetheless, the State effectively asks us to examine what it contends is a trend in United States Supreme Court jurisprudence that has modified Plymouth Sedan . More specifically, the State's argument proceeds as follows: (1) since Plymouth Sedan , the Supreme Court has declined to extend the exclusionary rule to a variety of non-criminal proceedings, and (2) the cumulative effect of these subsequent opinions *613 is to limit the scope of Plymouth Sedan in a way that renders that case inapplicable to the sort of forfeiture action at issue here. This reasoning is flawed.
¶34 As we detail below, none of the law that the State points to undercuts Plymouth Sedan 's application of the exclusionary rule to the type of forfeiture action at issue here. At best, the State's discussion suggests that the Court might in the future overrule or modify Plymouth Sedan . As it stands, we are bound by Plymouth Sedan . See Hohn v. United States , 524 U.S. 236, 252-53, 118 S.Ct. 1969, 141 L.Ed.2d 242 (1998) (The Court's "decisions remain binding precedent until [the Court] see[s] fit to reconsider them, regardless of whether subsequent cases have raised doubts about their continuing vitality. ") (emphasis added); Rodriguez de Quijas v. Shearson/American Express, Inc. , 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (federal courts of appeals must follow controlling Supreme Court precedent even when the precedent "appears to rest on reasons rejected in some other line of decisions").
¶35 We turn to the specific topics and cases that the State relies on and explain why none of those cases narrow Plymouth Sedan or render it inapplicable for current purposes.
¶36 Grand jury proceedings . A grand jury witness may not refuse to answer questions on the ground that the questions are based on evidence obtained from an unlawful search and seizure. United States v. Calandra , 414 U.S. 338, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). However, the reasoning in Calandra is highly context-specific:
Allowing a grand jury witness to invoke the exclusionary rule would unduly interfere with the effective and expeditious discharge of the grand jury's duties, *614 and extending the rule to grand jury proceedings would achieve only a speculative and minimal advance in deterring police misconduct at the expense of substantially impeding the grand jury's role.
Id. at 338-39, 94 S.Ct. 613.
¶37 Two sovereigns . Evidence seized by a local criminal law enforcement officer in good faith, but nonetheless unconstitutionally, may be admissible in a civil tax proceeding by or against the federal government. United States v. Janis , 428 U.S. 433, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (1976). In so holding, the Court stated: "In the complex and turbulent history of the [exclusionary] rule, the Court never has applied it to exclude evidence from a civil proceeding, federal or state." Id. at 447, 96 S.Ct. 3021. However, that sentence in Janis is followed by a footnote that appears to preserve the vitality of Plymouth Sedan :
The Court has applied the exclusionary rule in a proceeding for forfeiture of an article used in violation of the criminal law. [ Plymouth Sedan , 380 U.S. at 693, 85 S.Ct. 1246 ]. There it expressly relied on the fact that "forfeiture is clearly a penalty for the criminal offense" and "(i)t would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally *639 seized evidence is excludable, while in the forfeiture proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible." [ Id. at 701, 85 S.Ct. 1246 ]. See also [ Boyd , 116 U.S. at 634, 6 S.Ct. 524 ], where a forfeiture proceeding was characterized as "quasi-criminal."
Janis , 428 U.S. at 447 n.17, 96 S.Ct. 3021.
¶38 Further, as the Scotts point out, the Court in Janis based its decision in part on the concept that the evidence at issue in the federal civil tax proceeding fell outside the "zone of primary interest" of local police *615 officers when they seized the evidence in the course of investigating alleged gambling violations. See id. at 458, 96 S.Ct. 3021. The Court reasoned that local police investigating gambling violations could be expected to have little interest in seeing federal tax authorities prevail in seeking a federal civil deficiency judgment. See id. Therefore, excluding the evidence the police had seized in the gambling investigation from federal tax proceedings would add little to the already existing deterrent effect on the police of excluding the evidence from a gambling prosecution. See id. Here, in contrast, there is essentially no such attenuation. Local law enforcement conducted a single investigation, and used the same evidence to pursue both the criminal cases and this forfeiture action. That is, there is in essence a single "zone of interest" for local law enforcement here, namely, seizure of marijuana-related evidence from the Scotts in the course of enforcing the Controlled Substances Act.
¶39 Civil deportation . In Immigration and Naturalization Service v. Lopez-Mendoza , 468 U.S. 1032, 1050-51, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), the Court declined to apply the exclusionary rule in a civil deportation hearing in which an alien admitted his unlawful presence in the U.S. after an allegedly unlawful arrest by federal immigration agents. The Court observed that federal immigration officials had "already taken sensible and reasonable steps to deter Fourth Amendment violations," reducing the likely additional deterrent value of the exclusionary rule, and also noted that "[t]he costs of applying the exclusionary rule in the context of civil deportation hearings are high," because this would result in release from custody of persons who would immediately resume their commission of a crime *616 through continuing unlawful presence in the U.S. Id. at 1050. These specific rationales have no bearing in the context of this case.
¶40 State parole revocation . Applying the exclusionary rule as a matter of federal constitutional law in a state parole board revocation recommitment proceeding is not required because that "would severely disrupt the traditionally informal, administrative process of parole revocation" and would provide only "marginal deterrence of unreasonable searches and seizures." Pennsylvania Bd. of Probation and Parole v. Scott , 524 U.S. 357, 369, 118 S.Ct. 2014, 141 L.Ed.2d 344 (1998). We discern no reason how this law could be germane here. There is not an obvious equivalence between a state parole board recommitment proceeding and a civil forfeiture action of the type at issue here. See id. at 360, 365, 118 S.Ct. 2014 (releases on parole are essentially contractual agreements between states and prisoners granting "a limited degree of freedom in return for the parolee's assurance that he will comply with the often strict terms and conditions of his release" must allow for close supervision over parolees in order to fulfill the conditions of these agreements).[7]
*640 *617 ¶41 In sum, instead of supporting the broad proposition that the State here attributes to these cases-that the exclusionary rule is reserved for the context of criminal trials-the cases simply decline to provide the protections afforded by the exclusionary rule in specific contexts, all different from the context shared by Plymouth Sedan and this case.
II. Good-Faith Exception
¶42 The State asked the circuit court to hold an evidentiary hearing at which it could attempt to prove that the good-faith exception to the exclusionary rule should apply. See State v. Eason , 2001 WI 98, ¶27, 245 Wis. 2d 206, 629 N.W.2d 625 (when police act in *618 objectively reasonable reliance on warrant issued by detached and neutral magistrate, application of exclusionary rule may not be appropriate because it would not effectuate purpose of deterring unreasonable police actions) (citing United States v. Leon , 468 U.S. 897, 918-20, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) ). The court denied this request for an evidentiary hearing, stating only that it appeared to the court from the record developed to that point that, while police did not engage in "intentional misconduct," "there were some mistakes and omissions."
¶43 The State contends on appeal that it is entitled to an evidentiary hearing on the good-faith exception. See State v. Marquardt, 2001 WI App 219, ¶¶20-23, 247 Wis. 2d 765, 635 N.W.2d 188 (remanding for circuit court to address good-faith exception adopted in Eason , in a criminal case not involving forfeiture). The State provides a string of citations from non-Wisconsin and non-U.S. Supreme Court jurisdictions for the broad proposition that "the good-faith exception analysis" may be applied "in civil forfeiture actions before determining whether evidence should be excluded." However, the State does not provide argument or authority for the specific proposition that, when the State has failed to argue the good-faith exception in a criminal action, it may make that argument in a related forfeiture action.
*641 ¶44 In response, the Scotts are silent on all good-faith exception issues. They merely note the fact that the State failed to raise the good-faith exception in the criminal actions. We take this non-response as a concession that the State is entitled to at least an opportunity to address the potential for application of the good-faith exception. On that basis only, we conclude that it is appropriate to remand to the circuit *619 court for further proceedings with respect to the State's good-faith exception argument. We lack sufficient adversarial briefing to express a view on any aspect of the potential applicability of the good-faith exception. It might be, for example, that on remand the Scotts will present a persuasive argument that the circuit court should not allow further litigation with respect to whether the evidence obtained in the search is admissible.
CONCLUSION
¶45 For all of these reasons, we reverse the order granting summary judgment and remand for further proceedings consistent with this opinion, in which the State may attempt to establish that the good-faith exception applies.
By the Court. -Order reversed and cause remanded with directions.

Following consideration of the State's motion, this appeal was converted from a one-judge appeal to a three-judge appeal under Wis. Stat. Rule 809.41(3) (2017-18). All references to the Wisconsin Statutes are to the 2015-16 version unless otherwise noted, for reasons explained in note 2 of this opinion.

Although neither party addresses the topic, we observe that, due to a recent statutory change that does not affect this case, the effect of our conclusion regarding the applicability of the exclusionary rule to civil forfeiture actions under Wis. Stat. ch. 961 is likely to be limited in future cases. With the change, a criminal conviction is a prerequisite to a drug-violation-based forfeiture action. See 2017 Wisconsin Act 211, § 61 (effective date April 5, 2018; providing that Act "first applies to property that is seized on the effective date"). This change adds to Wis. Stat. § 961.55 the following new subsection: "A judgment of forfeiture may not be entered under this chapter unless a person is convicted of the criminal offense that was the basis for the seizure of the item or that is related to the action for forfeiture." See § 961.55(1g) (2017-18); 2017 Wisconsin Act 211, § 8. This statutory change does not apply here because the property at issue was seized before April 5, 2018, and therefore the 2015-16 version applies.

The parties do not dispute the State's right to dispose of the seized marijuana. The complaint alleged that the marijuana "is subject to [ ]forfeiture pursuant to" Wis. Stat. § 961.55(1)(a), (1)(c), (1)(g). The complaint sought a judgment that the marijuana, as well as drug paraphernalia also seized during the search, "be summarily forfeited" to the State, pursuant to § 961.55(6), after the completion of all proceedings in which the items might be needed as evidence.

As the Supreme Court has noted, " 'several of Boyd' s express or implicit declarations have not stood the test of time.' " United States v. Ward , 448 U.S. 242, 253, 100 S.Ct. 2636, 65 L.Ed.2d 742 (1980) (citing Fisher v. United States , 425 U.S. 391, 407, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976) ). However, this partial overruling of Boyd pertains to whether the search and seizure of evidence in Boyd -the use of a subpoena to obtain personal papers-was illegal under the Fourth and Fifth Amendments. See Ward , 448 U.S. at 251-54, 100 S.Ct. 2636. Thus, the partial overruling of Boyd does not alter the rationale expressed in Boyd , repeated in Plymouth Sedan , for applying the exclusionary rule to quasi-criminal proceedings, where the pertinent evidence has been seized in violation of the Fourth Amendment. To repeat, here there is no dispute that the pertinent evidence was illegally seized.

The Scotts suggest that we should rely on an opinion of our state supreme court issued shortly after One 1958 Plymouth Sedan v. Pennsylvania , 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965). We acknowledge that State ex rel. White v. Simpson , 28 Wis. 2d 590, 137 N.W.2d 391 (1965), contains some language consistent with application of the exclusionary rule to the civil forfeiture action here, but we decline to rely on White because the context there is readily distinguishable, i.e., a challenge to an arrest warrant issued by a county clerk at the direction of an assistant corporation counsel in a civil paternity proceeding. See id. at 592-93, 137 N.W.2d 391.

We observe that this appeal does not involve "contraband per se." As our state supreme court recognized, in an opinion issued a few years after Plymouth Sedan , the Court in Plymouth Sedan distinguished between illegally seized "contraband per se," such as narcotics, and illegally seized "derivative contraband," such as the sedan. See State v. Voshart , 39 Wis. 2d 419, 434-37, 159 N.W.2d 1 (1968) (characterizing the holding of Plymouth Sedan to be "that an automobile, even though used in the commission of a crime, could not be confiscated," absent justification under the Fourth Amendment; applying the distinction between "contraband per se" and "derivative contraband" to hold that illegally seized obscene material was contraband per se that need not be returned to its owner); see also Plymouth Sedan , 380 U.S. at 699, 85 S.Ct. 1246 ("[t]here is nothing even remotely criminal in possessing an automobile. It is only the alleged [criminal] use to which this particular automobile was put that subjects [the sedan's owner] to its possible loss."). In the instant case, the State does not contend that any seized item at issue in this appeal is "contraband per se."

Double Jeopardy Clause . While the State does not refer to it, authorities discussing this topic typically include discussion of United States v. Ursery , 518 U.S. 267, 292, 116 S.Ct. 2135, 135 L.Ed.2d 549 (1996). In Ursery , the Court held that "[i]n rem civil forfeitures are neither 'punishment' nor criminal for purposes of the Double Jeopardy Clause." At least in itself, this holding would appear to contradict one rationale stated in Plymouth Sedan , quoted above, namely, that the "object" of "a forfeiture proceeding" "is to penalize for the commission of an offense against the law." Similarly, at least at a general level, it is not easy to square the proposition that in rem civil forfeiture proceedings are "not criminal" (Ursery ) with the proposition that the forfeiture proceeding in Plymouth Sedan was "quasi-criminal." However, Ursery is a Double Jeopardy case based on the Fifth Amendment, not the Fourth Amendment, and the majority in Ursery makes no reference to Plymouth Sedan , even though a concurring justice does refer to it. See Ursery , 518 U.S. at 292, 116 S.Ct. 2135 ; see also Rodriguez de Quijas v. Shearson/American Express, Inc. , 490 U.S. 477, 484, 109 S.Ct. 1917, 104 L.Ed.2d 526 (1989) (addressing the authority of controlling Supreme Court precedent).
The concurring justice states:
Although there is language in our cases to the contrary, see [Plymouth Sedan , 380 U.S. at 700, 85 S.Ct. 1246 ]; [Boyd , 116 U.S. at 634, 6 S.Ct. 524 ], civil in rem forfeiture is not punishment of the wrongdoer for his criminal offense. We made this clear in Various Items of Personal Property v. United States , 282 U.S. 577, 51 S.Ct. 282, 75 L.Ed. 558 (1931)....
Ursery , 518 U.S. at 293, 116 S.Ct. 2135 (Kennedy, J., concurring); see Various Items , 282 U.S. 577, 51 S.Ct. 282 (holding that civil sanctions imposed in proceedings that are separate from a criminal prosecution stemming from a single incident do not constitute double jeopardy); but see State v. Hammad , 212 Wis. 2d 343, 351, 569 N.W.2d 68 (Ct. App. 1997) (as noted in the text, decided a year after Ursery , characterizing forfeiture of a vehicle used in commission of a felony as having a "punitive purpose").